IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SARAH SUE CHANNING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-00458-SH |
| | ) | |
| SENECA-CAYUGA NATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is the Tribal Defendants' motion to dismiss Plaintiffs' petition for writ of habeas corpus.[1] Plaintiffs filed their petition under the Indian Civil Rights Act, asserting that the Tribal Defendants' actions amount to an illegal detention. Tribal Defendants, however, argue that (1) this Court lacks subject-matter jurisdiction due to their sovereign immunity; (2) Plaintiffs have failed to exhaust tribal remedies; and (3) Plaintiffs have otherwise failed to state a claim upon which relief may be granted. In the tribal habeas context, and particularly where the definition of "detention" is disputed, the Tenth Circuit has found that a district court must consider tribal exhaustion before addressing subject-matter jurisdiction. Plaintiffs have not exhausted their tribal remedies, and Plaintiffs' claims against the Tribal Defendants will be dismissed without prejudice.

**I.    Background**

On October 24, 2023, Plaintiffs filed a petition and complaint. As relevant to this motion, Plaintiffs have petitioned the Court for a writ of habeas corpus under the Indian

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 44.)

Civil Rights Act ("ICRA"), 25 U.S.C. § 1303.[2] (ECF No. 2.) Plaintiffs ask that the writ be issued to the Seneca-Cayuga Nation and members of its Business Committee in their official capacity[3] (collectively, the "Tribal Defendants"). (*Id.*) Plaintiffs contend the enactment of two resolutions effectively banish them from the Nation and deny them due process, equal protection, and other ICRA-protected rights. (*Id.* ¶¶ 95–146.) Plaintiffs further seek a variety of declaratory and injunctive relief from the Court. (*Id.* at 36.[4]) Their allegations are as follows:[5]

### A. Plaintiffs and the Tribal Defendants

The Seneca-Cayuga Nation ("Nation") is a federally recognized Indian tribe based in northeastern Oklahoma. (*Id.* ¶ 12.) *See also* Indian Entities Recognized by and Eligible

---

[2] Plaintiffs also assert claims against the United States Department of the Interior, Secretary of the Interior, and Assistant Secretary for Indian Affairs (collectively, the "Federal Defendants") for violations of the Administrative Procedures Act, 5 U.S.C. §§ 701–706, relating to a Secretarial election to amend the Nation's constitution. The Federal Defendants' motion to dismiss is the subject of a separate order.

[3] Specifically, Defendants Charles Diebold, Curt Lawrence, Kim Guyett, Cynthia Donohue Bauer, Amy Nuckolls, Hoyit Bacon, and Tonya Blackfox. Tribal Defendants argue that Plaintiffs have also separately sued the "Business Committee," itself. (ECF No. 39 at 10.) It is true that Plaintiffs list the "Seneca-Cayuga Nation Business Committee" in the section of their petition listing "parties." (ECF No. 2 ¶ 13.) However, Plaintiffs did not number the Business Committee as a separate defendant in their caption, *see* LCvR 3-1(d); they do not list it as one of the "Tribal Defendants" against whom their claims are brought (*id.* at 2); and they did not purport to serve the Business Committee as a separate defendant (*see* ECF Nos. 6, 9-15). The Court therefore does not consider the Business Committee, as separate and distinct from its members, to be a defendant in this case. In any event, a suit against an officer in their official capacity generally constitutes a suit against the governmental entity she represents. *Cf. Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (noting that a suit against a sheriff in his official capacity is a suit against the county he represents).

[4] References to page numbers refer to the ECF header.

[5] The Court draws these allegations from Plaintiffs' complaint and the attached documents. When ruling on a Rule 12(b)(6) motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

to Receive Servs. from the U.S. Bureau of Indian Affs., 89 Fed. Reg. 944, 946 (Jan. 8, 2024). The Nation's Constitution refers to its citizens as "members." Seneca-Cayuga Nation Const. art. III.[6]

The General Council is the Nation's "supreme governing body" and is made up of all adult Nation members. (*Id.*) *See also* Seneca-Cayuga Nation Const. art. IV. Unless a special meeting is called, the General Council meets only once a year. Seneca-Cayuga Nation Const. art. VIII & By-Laws art. III.

The Business Committee handles the day-to-day operations of the Nation and has the power to "transact business and otherwise speak or act on behalf of the Nation in all matters on which the Nation is empowered to act." (ECF No. 2 ¶ 13.) *See also* Seneca-Cayuga Nation Const. art. VI. The Business Committee is comprised of the Nation's Chief, Second Chief, Secretary/Treasurer, and four elected Councilmen. *Id.* art. V & VI. Many of the Nation's resolutions state that the Business Committee is "subordinate" to the General Council and "cannot override or disregard" the General Council's Resolutions or directives. (*See, e.g.,* ECF No. 2-13 at 9, 11, 16, 20, 22, 24.)

Plaintiffs are enrolled citizens and former members of the Nation's Business Committee. (ECF No. 2 ¶¶ 9–11.) The individual Tribal Defendants are current members of the Business Committee. (*Id.* ¶¶ 14–20.)

---

[6] Plaintiffs attach the pre-2023 version of the Nation's constitution and by-laws to their complaint (the "2014 Constitution"). (ECF No. 2-2.) The Nation currently recognizes the version of the constitution and by-laws that was amended in the 2023 Secretarial election (the "2023 Constitution"). The 2023 Constitution may be found at https://sctribe.com/government/constitution-bylaws (last visited Sept. 20, 2024). Plaintiffs' claims against the Federal Defendants arise from the Secretarial election to enact the 2023 amendments to the Constitution. (*See* ECF No. 2 ¶¶ 147–66.)

3

### B. The Allegations

#### 1. Resolution 02-062108 is Enacted

At the 2008 annual meeting, the General Council enacted Resolutions 01-062108 and 02-062108 to sanction certain individuals for the alleged unauthorized payment of tribal funds. (*Id.* ¶¶ 25–28; ECF No. 2-3 at 2.) Resolution 01-062108 banned several tribal members, including Plaintiff Channing, from receiving tribal social service benefits, serving on tribal committees, and holding employment with the Nation. (ECF No. 2 ¶ 26.) Resolution 02-062108 banned multiple non-member employees, including Channing's husband, from all Nation lands and properties and from holding employment with the Nation. (*Id.* ¶ 28.) Both resolutions extended to the tribal-member spouse of the named individuals. (*Id.* ¶¶ 26, 28.) Plaintiffs allege the sanctioned individuals never received a hearing or other "opportunity to seek relief from the sanctions." (*Id.* ¶ 29.)

A few days later, then-Chief LeRoy Howard asked the Nation's legal counsel, Geoffrey Standing Bear, to review the two resolutions. (*Id.* ¶ 30; ECF No. 2-4.) Standing Bear opined the resolutions were a "cause of concern" because it was unclear whether the sanctioned individuals "received notice of the charges against them" and "were allowed an opportunity to present" a defense before the General Council prior to the resolutions' passage. (ECF No. 2 ¶ 30; ECF No. 2-4 at 3.) Given these concerns, he recommended the resolutions be "rescinded or repealed." (*Id.*)

Nearly four years later, on June 12, 2012, the General Council rescinded the tribal member resolution—Resolution 01-062108[7]—finding it was in the "Tribe's best interest." (ECF No. 2 ¶ 32; ECF No. 2-5.)

---

[7] Resolution 01-062108 remains rescinded and is not at issue in the current lawsuit.

4

### 2. The Business Committee Rescinds Resolution 02-062108

By June 2014, Plaintiffs led the Nation's Business Committee—Fisher was Chief; Crow was Second Chief; and Channing, despite still being sanctioned under Resolution 02-062108, was Secretary/Treasurer. (ECF No. 2 ¶¶ 9–11.) On August 12, 2014, Fisher asked the Nation's new legal counsel, John Ghostbear, to review Resolution 02-062108 and the Standing Bear opinion. (*Id.* ¶ 33.) Ghostbear echoed Standing Bear's statements that this type of resolution "constitute[d] a violation of the guarantee of due process" contained in the ICRA and the Nation's Constitution. (*Id.*; ECF No. 2-21 at 2.) Ghostbear further opined that, because the General Council lacked authority to enact legislation that violated the Nation's Constitution in the first place, the resolution was a "nullity . . . of no force or effect." (ECF No. 2 ¶ 33; ECF No. 2-21 at 3.) On August 13, 2014, the Business Committee passed a resolution rescinding Resolution 02-062108. (ECF No. 2 ¶ 34; ECF No. 2-22.) This resolution noted that, while the General Council is the Nation's Supreme Governing Body, it may not pass unconstitutional legislation or violate the rights of its members or non-members. (*Id.*) It further noted that Resolution 02-062108 was "unconstitutional and in violation of due process rights and equal protection of the law." (*Id.*)

### 3. The Business Committee Reinstates Resolution 02-062108 and Passes a New Resolution Placing Plaintiffs' Tribal Benefits on Hold

On April 5, 2021, Channing, now the Nation's Chief, resigned. (ECF No. 2 ¶¶ 38–39.) The next day, the Business Committee basically reenacted Resolution 02-062108. (*Id.* ¶ 40; ECF No. 2-10 at 2.) That is, the Business Committee found its 2014 predecessor lacked the authority to rescind a General Council resolution and, therefore, it rescinded the rescission. (*Id.*)

Then, at the 2021 annual meeting, the General Council enacted Resolution 05-060521; this resolution authorized the Business Committee to "contract an investigator and perform an audit" of the previous administration (including Plaintiffs) for "allegations of possible misappropriation of funds and illegal stipends and benefits." (*See id.* ¶ 49; ECF No. 2-11 at 1; ECF No. 2-16 at 1.) On July 27, 2021, the Business Committee further enacted Resolution 025-072721, which placed on hold all tribal benefits for Plaintiffs pending the results of the investigation. (ECF No. 2 ¶ 49; ECF No. 2-11 at 2–3; ECF No. 2-16 at 2–3.)

On July 30, 2021, Defendant Guyett issued a letter to Plaintiffs informing them of the investigation but little else. (ECF No. 2 ¶ 50; ECF Nos. 2-11 & 2-16.) On August 20, 2021, Channing's husband received a letter notifying him that Resolution 02-062108 was once again in effect. (ECF No. 2 ¶ 52; ECF No. 2-12.) The letter indicated that "any tribal member[s] sanctioned under this resolution are able to address [the] General Council, on their own behalf, to ask for reconsideration of the sanctions placed upon them." (*Id.*) As of the filing of the above-captioned action in October 2023, no evidence had been provided supporting the allegations of misappropriation of funds, and Plaintiffs' tribal benefits were still being withheld. (ECF No. 2 ¶ 90.) Plaintiffs assert they are "unlawfully detained by the imposed banishment and withholding of benefits." (*Id.* ¶ 94.)

## II. Analysis

Tribal Defendants move to dismiss Plaintiffs' habeas petition. (*See* ECF No. 39.) They contend (1) the Court lacks subject-matter jurisdiction, because sovereign immunity bars all of Plaintiffs' ICRA-based claims except for habeas relief; (2) Plaintiffs have failed to show they are in detention or have exhausted tribal remedies, as would be required to seek habeas relief; and (3) Plaintiffs otherwise have failed to state a claim upon which relief may be granted.

6

Often, jurisdiction is a threshold issue a court should consider before reaching the merits of a plaintiff's claim. *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003). However, the Tenth Circuit has held that tribal exhaustion—although non-jurisdictional—is also a threshold issue. *Chegup v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 28 F.4th 1051, 1054 (10th Cir. 2022). In *Chegup*, the Tenth Circuit found that it was error for a district court to determine the "jurisdictional" requirement that a habeas petitioner be "in custody" without first determining that tribal remedies had been exhausted. *Id.* at 1067 ("we think this is the extraordinary case in which an apparent tribal exhaustion problem precludes consideration of a question that has been referred to as jurisdictional"). As in *Chegup*, Plaintiffs are asking the Court to determine "complex conceptual questions surrounding banishment, including the relationship between 'detention' under ICRA and 'custody' under federal case law." (ECF No. 48 at 24–25.) *See also* 25 U.S.C. § 1303 ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."). That is, Plaintiffs are asking the Court to look beyond the concepts of physical restraint and to consider banishment from tribal property and services as "detention." (ECF No. 48 at 25–26.) *Cf. Chegup*, 28 F.4th at 1058–59. As the Tenth Circuit noted two years ago, "[w]hether banishment constitutes detention for purposes of § 1303 is a significant question that implicates several additional issues and has divided two of our sister circuits." *Id.* at 1062; *see also id.* at 1067 (noting a Tenth Circuit decision on this issue would be "a far-reaching substantive holding" that affects far more than the parties to a particular suit). As such, "[r]espect for tribal sovereignty require[s] that, before the court below decide[s] this complex and difficult question about the scope of ICRA habeas, the banished members must have either exhausted their tribal remedies or met the heavy burden of demonstrating why they [have] not." *Id.* at 1054.

### A. Exhaustion of Tribal Remedies

Exhaustion of remedies is often raised when there is a question of the tribe's own jurisdiction. *See, e.g., Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985) (noting Congress's policy of supporting tribal self-governance "favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge"). But the rule has not been limited to cases challenging that jurisdiction. The Tenth Circuit has found that exhaustion is almost always dictated when the activity at issue arises on the reservation, *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1378 (10th Cir. 1993), and that it applies to § 1303 habeas petitions, *Chegup*, 28 F.4th at 1061.

Tribal exhaustion works by "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997). "[P]roper respect for tribal legal institutions requires that they be given a 'full opportunity' to consider the issues before them and 'to rectify any errors.'" *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 (1987) (quoting *Nat'l Farmers*, 471 U.S. at 857). This means pursuing those tribal remedies to the final available forum, typically the tribal appellate court. *Id*. at 17. ("At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.").

However, certain "[n]onjudicial tribal institutions have also been recognized as competent law-applying bodies" that can provide relief for alleged ICRA violations. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 66 & n.22 (1978) (noting "judicial authority in the Santa Clara Pueblo is vested in its tribal council"); *see also Ordinance 59 Ass'n v. U.S.*

*Dep't of Interior Sec'y*, 163 F.3d 1150, 1157 (10th Cir. 1998) (noting that a tribe's general council as "the Tribe's supreme governmental body" may be an available forum to resolve an intra-tribal conflict); *White v. Pueblo of San Juan*, 728 F.2d 1307, 1312–13 (10th Cir. 1984) ("non-judicial tribal institutions—such as tribal councils—are competent adjudicatory forums").

Tribal exhaustion means an "actual attempt," not merely speculation.[8] *White*, 728 F.2d at 1313; *see also id.* (finding "speculative futility" does not justify federal jurisdiction); *Harvey ex rel. Chavez v. Star*, 96 F.3d 1453, 1996 WL 511586, at *2 (10th Cir. 1996) (unpublished) (concluding "[p]essimism about tribal remedies" does not allow a party to bypass exhaustion and come straight to federal court).[9]

"As a prudential rule based on comity, the exhaustion rule is not without exception." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1150 (10th Cir. 2011). Exhaustion of tribal remedies is not required:

> (1) where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) where the tribal court action is patently violative of express jurisdictional prohibitions; (3) where exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction; (4) when it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by the main rule established in *Montana v. United States*[, 450 U.S. 544 (1981)]; or (5) it

---

[8] *White* was addressing the so-called *Dry Creek* exception to tribal sovereign immunity, not tribal exhaustion. *See White*, 728 F.2d at 1312 ("This is not merely a requirement that the exhaustion of tribal remedies is a prerequisite to federal jurisdiction, but instead, that tribal remedies, if existent, are exclusive."); *see also id.* at 1309–10 (discussing *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980)). However, the Tenth Circuit has applied the actual-attempt requirement to tribal exhaustion. *See Bank of Okla. v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1170 (10th Cir. 1992) (stating in context of tribal exhaustion, "The Bank cannot simply assert that it is not subject to tribal court jurisdiction; rather, it must actually seek adjudication of this issue in tribal court.").

[9] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

9

> is otherwise clear that the tribal court lacks jurisdiction so that the exhaustion requirement would serve no purpose other than delay.

*Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006) (cleaned up). These exceptions are narrowly applied, and the party alleging the exception must "make a substantial showing of eligibility." *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1238–39 (10th Cir. 2014); *see also Chegup*, 28 F.4th at 1069 ("while 'claims of futility, bias, bad faith, and the like roll easily off the tongue, they are difficult to sustain'" (quoting *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 34 (1st Cir. 2000))).

### B. Plaintiffs Have Not Exhausted Their Tribal Remedies

Plaintiffs tersely state in their petition that they "have exhausted all . . . tribal remedies, to the extent that they exist or are available." (ECF No. 2 ¶ 93.) Plaintiffs' briefing adds nothing to this statement. They do not outline any attempt at exhaustion; instead, they argue there are no remedies available to them. (ECF No. 48 at 18–23.) Defendants argue there are three different tribal remedies available to Plaintiffs—the Court of Indian Offenses, the Nation's General Council, and the Nation's Grievance Committee. (ECF No. 39 at 24–27.) While the Court does not see the Grievance Committee as a viable option for the remedies Plaintiffs seek, the Court finds the other two avenues are potentially available, and Plaintiffs have made no attempt to exhaust them. Plaintiffs further have not made a substantial showing of bad faith or futility.

#### 1. The Court of Indian Offenses

The Court of Indian Offenses (or "CFR Court") provides "for the administration of justice for Indian tribes in those areas of Indian country where tribes retain jurisdiction . . . but where tribal courts have not been established to exercise that jurisdiction." 25 C.F.R. § 11.102. Although CFR Courts "retain some characteristics of an agency of the

10

federal government," these courts "function as tribal courts" and provide a "judicial forum through which the tribe can exercise its jurisdiction until such time as the tribe adopts a formal law and order code." *Tillett v. Lujan*, 931 F.2d 636, 640 (10th Cir. 1991) (citing 25 C.F.R. § 11.1(d)–(e) (1990)[10]); *see also Gallegos v. French*, 2 Okla. Trib. 209, 234 (Del. Tribe Ct. Indian Appeals 1991) (explaining that modern CFR Courts are most aptly described as a federally administered tribal court). The Bureau of Indian Affairs ("BIA") indicates that the Miami Agency CFR Court currently serves the Nation. *See* Court of Indian Offenses, Bureau of Indian Aff., https://www.bia.gov/CFRCourts (last visited Aug. 28, 2024).

Each CFR court "has jurisdiction over any civil action arising within the territorial jurisdiction of the court in which: (1) The defendant is an Indian; or (2) Other claims, provided at least one party is an Indian." 25 C.F.R. § 11.116(a). CFR Courts "may not adjudicate an election dispute, take jurisdiction over a suit against a tribe, or adjudicate any internal tribal government dispute, unless the relevant tribal governing body passes a resolution, ordinance, or referendum granting the court jurisdiction." 25 C.F.R. § 11.118(b). "A tribe may not be sued in a Court of Indian Offenses unless its tribal governing body explicitly waives its tribal immunity by tribal resolution or ordinance." *Id.* § 11.118(d).

Here, it appears the CFR Court could provide a potential judicial forum for the resolution of Plaintiffs' claims. Indeed, the 2008 Standing Bear opinion cited by Plaintiffs stated that persons aggrieved by the original 2008 resolutions could file an action in the

---

[10] A similar provision is now found at 25 C.F.R. § 11.104(a)(2).

CFR Court.[11]  (ECF No. 2-4 at 3.)  Even were Plaintiffs' claims deemed an "internal tribal government dispute," it appears the Nation has enacted an ordinance giving the CFR Court jurisdiction over "governmental disputes." (*See* ECF No. 48-1 at 5.)

There is no evidence the Nation has waived its immunity from suit in the CFR Court, but this does not necessarily deprive Plaintiffs of relief in that forum.  First, any habeas claims are properly brought against the individual custodian, not the governmental entity.  *See Santa Clara Pueblo*, 436 U.S. at 59; *see also Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 899 (2d Cir. 1996) ("Because a petition for a writ of habeas corpus is not properly a suit against the sovereign, the Tonawanda Band is simply not a proper respondent.").  Second, Plaintiffs may be able to seek some non-habeas relief against tribal officials in tribal court.  Tribal courts—including CFR courts—have recognized *Ex parte Young* or similar doctrines as allowing for relief against tribal officials notwithstanding the tribe's sovereign immunity.  *See e.g., Combrink v. Allen*, 3 Okla. Trib. 46, 54 (Tonkawa Ct. Indian Appeals 1993) (citing *Ex parte Young*, 209

---

[11] The then-called Seneca-Cayuga Tribe was listed as covered by the Court of Indian Offenses through August 10, 2008.  *See* 25 C.F.R. § 11.100(a)(12)(xii) (2008).  The Nation then fell off the list of covered tribes.  *See* 25 C.F.R. § 11.100 (2009).  Then, in March 2013, the BIA added the Seneca-Cayuga Tribe back to the list.  *See* Court of Indian Offenses, 78 Fed. Reg. 14017 (Mar. 4, 2013) (interim rule); Court of Indian Offenses, 78 Fed. Reg. 49120 (Aug. 13, 2013) (final rule).  This re-addition of the Nation to the CFR Court did not indicate that the court's jurisdiction was limited to governmental disputes.  "Adding these tribes will allow for the administration of justice until the added tribes put into effect a law-and-order code that establishes a court system that meets regulatory requirements or until the tribe adopts a legal code and establishes a judicial system in accordance with its constitution and bylaws or other governing documents." *Id.* at 49121.  Plaintiffs contend a resolution limits the authority of the CFR court to *only* hear governmental disputes. (ECF No. 48 at 22.)  However, a proposed 2023 General Council resolution indicates that the CFR Court's scope was broader than mere governmental disputes, noting that "[p]resently our court cases, including Indian Child Welfare, are heard by the CFR Court . . . ." (ECF No. 2-13 at 22.)  The scope of the tribal court's jurisdiction is not something for the undersigned to decide before that court, itself, has had an opportunity to comment on its own jurisdiction.

U.S. 123 (1908)); *Littlejohn v. Smith*, 12 Am. Tribal Law 347, 348 (Cherokee Nation Sup. Ct. 2015) (agreeing *Ex parte Young* allows for suit against governmental officials without government being named as a party, but not for monetary damages); *Fox v. Brown*, 6 Am. Tribal Law 446, 449 n.2 (Mohegan Trial Ct. 2005) (noting existence of *Ex parte Young* exception to sovereign immunity); *Youvella v. Dallas*, 2 Am. Tribal Law 369, 372–73 (Hopi Tribe App. Ct. 2000) (finding treasurer not protected by sovereign immunity under *Ex parte Young*); *McIntosh v. Beaver*, 6 Okla. Trib. 158, 1999 WL 33589146, at *3 (Muscogee (Creek) Nation Sup. Ct. Sept. 16, 1999) (noting tribe would likely follow standards used by other tribes in allowing *Ex parte Young* action). *But see The Legislature v. Flyingman,* 11 Okla. Trib. 837, 2009 WL 10271467, at *5–6 (Cheyenne & Arapaho Tribes Sup. Ct. Dec. 17, 2009) (declining to apply an *Ex parte Young*-type reasoning for a variety of reasons, including the availability of a suit against executive branch officials under the tribal constitution). It is possible that the CFR Court for the Seneca-Cayuga Nation will similarly hold.[12] Because Plaintiffs have not actually

---

[12] Tribal Defendants do not provide support for their blanket statement that Plaintiffs' claims for injunctive and declaratory relief against the Nation's officials under the ICRA would be barred in "all courts," including tribal. (ECF No. 39 at 24 n.8 (citing *id*. at 18-22).) The authorities cited by the Tribal Defendants address the availability of a remedy in <u>federal</u> courts following the decision in *Santa Clara Pueblo*. Indeed, in *Santa Clara Pueblo*, the Supreme Court justified its limitation of federal jurisdiction, in part, because "[t]ribal forums are available to vindicate rights created by the ICRA, and § 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply." 436 U.S. at 65; *see also* 1 Cohen's Handbook of Federal Indian Law § 7.05 (2024) ("It is arguable that ICRA implicitly waived a tribe's sovereign immunity in its own tribal courts."). Tribes have addressed the vindication of ICRA-based rights in a variety of ways. *See, e.g., DeCoteau v. Fort Peck Tribes*, 4 Am. Tribal Law 277, 281–86 (Fort Peck Ct. App. 2002) (discussing ICRA claims against tribal officials in light of both federal and tribal law); *Bibeau v. Wilson*, No. CV-06-22, 2006 WL 6822505, at *9 (Leech Lake Trial Div. Dec. 12, 2006) ("tribal courts are the appropriate forums to resolve disputes alleging violations of the Indian Civil Rights Act, provided the suit requests declaratory or injunctive relief and is filed against a tribal official who exceeds his or her authority under tribal law" (citation omitted)). Moreover, the Nation's Constitution contains its own bill of rights and further incorporates the protections guaranteed by the ICRA. *See* Seneca-

attempted to exhaust any tribal remedies in the CFR Court, the undersigned simply lacks this information.

The Court rejects Plaintiffs' argument that no CFR or other tribal court currently exists. Plaintiffs contend that, at the 2023 annual meeting, the Business Committee proposed a resolution that would allow it to "fund and maintain" a tribal court system. (ECF No. 2 ¶ 92; ECF No. 2-13 at 22–23.) Based on this proposed resolution, Plaintiffs contend they cannot seek tribal relief because the Nation has "resolved to exit the Court of Indian Offenses." (ECF No. 2 ¶ 7(a).) However, there is nothing before the Court to suggest that the proposed resolution has passed or that any resolution granting jurisdiction to the CFR Court was rescinded.[13] Instead, under the current regulations, the BIA is required to maintain an "updated list" on its website (www.bia.gov) "of the areas in Indian Country where Courts of Indian Offenses are established and, upon any change to the list, [to] publish notice of the change in the Federal Register with an updated complete list." 25 C.F.R. § 11.100. As noted above, the BIA website still lists the CFR court as including the Nation (*supra* at 11), and there is no indication in the Federal Register that the Nation has been removed from the list of such courts.

---

Cayuga Nation Const. art. XII. If the tribal court recognizes an *Ex parte Young* exception to sovereign immunity, it may find that exception applies to acts in violation of the Nation's Constitution.

[13] Plaintiffs contend that, once a tribal court is established, "it will be impossible . . . to receive a fair hearing . . . because of the overarching influence and control of the Tribal Defendants and its members." (ECF No. 2 ¶ 138.) If the Nation established a tribal court, Plaintiffs are required to exhaust this remedy. Allegations of mere local bias are not an exception to exhaustion and are insufficient to invoke federal jurisdiction. *See Iowa Mut.*, 480 U.S. at 18–19 (rejecting argument that local bias and tribal court incompetence are appropriate exceptions to exhaustion and finding that holding otherwise would contradict Congress's policy of promoting tribal court development).

### 2.  General Council

If the CFR Court truly did not provide an avenue by which Plaintiffs could exhaust their tribal remedies, it is possible the General Council could fulfill that role.  The General Council is the "supreme governing body of the Nation." Seneca-Cayuga Nation Const. art. IV.  Although the General Council only regularly meets once a year, it can be called into special meetings at the Chief's discretion and must be called into special meetings upon written request of a majority of the Business Committee members or 150 Nation members.  Seneca-Cayuga Nation By-Laws art. III, § 2.[14]  Plaintiffs do not assert the Chief or Business Committee has refused to call a special meeting or that they tried to seek relief at the annual meeting and were denied.  As Plaintiffs acknowledge, the General Council has previously rescinded a resolution that sanctioned members of the Nation, including Channing.  (*See* ECF No. 2-5 (resolution rescinding Resolution 01-62108).)  Moreover, Channing's husband received a letter from the Nation's Secretary/Treasurer informing him that any tribal member affected by Resolution 02-062108 could address the General Council "to ask for reconsideration of the sanctions placed upon them." (ECF No. 2-12 at 1.)

Plaintiffs contend they may run into various issues in seeking relief from the General Council, such as reaching quorum.[15]  (ECF No. 48 at 20.)  Plaintiffs' speculation is not enough to circumvent the tribal exhaustion rule; instead, they must make an actual attempt to seek relief.  *See White*, 728 F.2d at 1313.  In these circumstances, the allegation

---

[14] Under the 2014 Constitution and By-Laws, the latter required a request of 175 members. (ECF No. 2-2 at 4.)

[15] The 2023 amendments to Constitution and By-Laws lowered the required quorum from 225 to 150.  *Compare* 2014 By-Laws art. IV, § 2, *to* 2023 By-Laws art. IV, § 2.

that no tribal court exists—even if true—would not be enough to excuse Plaintiffs from their obligation to exhaust tribal remedies.[16]

Plaintiffs have failed to meet their "heavy burden" of demonstrating why they have not exhausted their tribal remedies. *Chegup*, 28 F.4th at 1054.

### C. Dismissal of This Action is Appropriate

In applying the tribal exhaustion rule, a district court must decide whether to dismiss the action or stay it pending exhaustion. *Nat'l Farmers*, 471 U.S. at 857; *see also* Deborah F. Buckman, *Construction and Application of the Fed. Tribal Exhaustion Doctrine,* 186 A.L.R. Fed. 71 § 2[a] (2003) ("A court has the discretion to either dismiss or stay proceedings in such matters pending tribal court exhaustion."), *quoted with approval in Thlopthlocco*, 762 F.3d at 1241.[17] In *Thlopthlocco*, the Tenth Circuit reversed the district court's decision to dismiss the action, finding that abatement was preferrable. 762 F.3d at 1241. However, in that case, the dispute revolved around who could properly act for the tribal plaintiff, and an adverse result in the tribal forum could result in

---

[16] It does not appear that the Grievance Committee provides a potential forum in which Plaintiffs could vindicate their ICRA rights. The Grievance Committee is established by the Constitution to "investigate complaints of misconduct or other acts of the Business Committee" and call special meetings of the General Council to act on such complaints. *See* Seneca-Cayuga Nation Const. art. X. The General Council then gives the "accused" a hearing and can remove him from office and elect a successor. Tribal Defendants reinterpret Plaintiffs' petition as a "litany of complaints against Business Committee members" and extrapolate that this makes the Grievance Committee the "forum designed" for Plaintiffs' purposes. (ECF No. 39 at 27.) However, as it relates to Plaintiffs' habeas petition, they seek to be discharged from the "detention and restraints upon their personal liberty" and to have the resolutions against them vacated. (ECF No. 2 at 36.) There is nothing indicating that the Grievance Committee process could rescind the resolution or otherwise "release" Plaintiffs from their alleged "detention." Plaintiffs' request for an order "removing Defendants Nuckolls and Donohue Bauer from Office" appears to relate to their claims against the Federal Defendants arising from the Secretarial election and are not part of the relief they seek against the Tribal Defendants.

[17] While *Thlopthlocco* quotes this sentence exactly, it uses the citation "186 A.L.R. Fed. 27, *2a."

16

depriving the interested parties of their ability even to return to federal court. *Id.* Here, the plaintiffs are individuals who will be free to reassert their claims against the Tribal Defendants after exhausting their tribal remedies. Further, a stay of a tribal habeas petition is generally not appropriate unless the petitioner shows good cause for his failure to exhaust. *Valenzuela v. Silversmith*, 699 F.3d 1199, 1208 & n.4 (10th Cir. 2012). And, finally, neither party has asked the Court to enter a stay if it finds no tribal exhaustion. In these circumstances, the Court finds that dismissal of the petition is appropriate.

IT IS THEREFORE ORDERED that the *Defendants' Seneca-Cayuga Nation, Charles Diebold, Curt Lawrence, Kim Guyett, Cynthia Donohue Bauer, Amy Nuckolls, Hoyit Bacon, and Tonya Blackfox's Motion to Dismiss* (ECF No. 39) is GRANTED. Plaintiffs' claims against the Tribal Defendants are DISMISSED WITHOUT PREJUDICE for failure to exhaust tribal remedies.

ORDERED this 23rd day of September, 2024.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT