**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SARAH SUE CHANNING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-00458-SH |
| | ) | |
| SENECA-CAYUGA NATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is the Federal Defendants' motion to dismiss Plaintiffs' complaint.[1]  Plaintiffs seek judicial review under the Administrative Procedures Act, contending the Secretary of the Interior—through her designees—arbitrarily and capriciously allowed unqualified members of the Seneca-Cayuga Nation to vote in a Secretarial election.  Federal Defendants argue the Court does not have subject-matter jurisdiction and that Plaintiffs have failed to state a claim, in part because the Secretary's decision was not arbitrary and capricious.  Based on the current record, the Court finds it has jurisdiction over Plaintiff Crow's claims but not any claims made by the other plaintiffs.  However, a 12(b)(6) motion lacking an administrative record is not the proper vehicle by which to review an agency action under the APA.  The motion will be denied as to Plaintiff Crow but granted as to the other plaintiffs.  The Court will set a schedule for completion of the administrative record and further briefing.

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a).  (ECF No. 44.)

## I.    Background

On October 24, 2023, Plaintiffs Sarah Sue Channing ("Channing"), Lester Jerry Crow ("Crow"), and William Fisher ("Fisher") filed a complaint against the United States Department of the Interior (the "Department"); Deb Haaland, Secretary of the Interior (the "Secretary"); and Bryan Newland, Assistant Secretary for Indian Affairs (collectively, the "Federal Defendants"), among others.  (ECF No. 2.)  Relevant to this motion, Plaintiffs seek judicial review under the Administrative Procedures Act ("APA"), §§ 701–706, relating to a 2023 Secretarial election that broadened the Seneca-Cayuga Nation's membership eligibility requirements.[2]  (*Id.*)  Plaintiffs allege the Secretary's decision to allow 26 improperly enrolled members to vote in the election was arbitrary and capricious.  (*Id.* ¶¶ 84–85, 147–58.)  Plaintiffs further seek a variety of declaratory and injunctive relief from the Court.  (*Id.* at 36–37.[3])

### A.    What is a Secretarial Election?

Secretarial elections are a product of the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 5101–5129, and the Oklahoma Indian Welfare Act ("OIWA"), 25 U.S.C. §§ 5201–5210.

Pursuant to the IRA,

Any Indian tribe . . . may adopt an appropriate constitution and bylaws, and any amendments thereto, which shall become effective when—

---

[2] Plaintiffs have also petitioned the Court for a writ of habeas corpus under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1303.  Plaintiffs seek the writ against the Seneca-Cayuga Nation and members of the Nation's Business Committee (collectively, the "Tribal Defendants").  Plaintiffs contend the enactment of two resolutions effectively banish them from the Nation and deny them many ICRA-protected rights.  The Tribal Defendants' motion to dismiss is the subject of a separate order.

[3] References to page numbers refer to the ECF header.

(1) ratified by a majority vote of the adult members of the tribe . . . at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe; and

(2) approved by the Secretary . . . .

25 U.S.C. § 5123(a); *see also id.* § 5123(b) (providing same procedure for revocation of a constitution or bylaws).  As required by statute, the Department has promulgated regulations governing this election process, the current version of which may be found at 25 C.F.R. pt. 81.

The Seneca-Cayuga Nation adopted a constitution under the OIWA in 1937.  (*See, e.g.,* ECF No. 2-2 at 1.)  The OIWA similarly provides that a recognized tribe in Oklahoma has "the right to organize for its common welfare and to adopt a constitution and bylaws, under such rules and regulations as the Secretary of the Interior may prescribe," and such tribes "enjoy any other rights or privileges secured to an Indian tribe" under the IRA.  25 U.S.C. § 5203; *see also id.* § 5209 ("The Secretary of the Interior is authorized to prescribe such rules and regulations as may be necessary to carry out the provisions of this chapter.").

The regulations issued by the Secretary govern both elections under the IRA and the OIWA, with some rules applicable to all such Secretarial elections, *see* 25 C.F.R. §§ 81.1–81.18, and others specific to the IRA or the OIWA, *see id.* §§ 81.19–81.45 (IRA), 81.46–81.48 (OIWA).  The primary differences relate to the preapproval of proposed amendments under the OIWA.  *Id.* § 81.46(a).  Once the Secretarial Election Board is established (*see infra*), an OIWA election follows the same procedures as one conducted under the IRA.  *Id.* § 81.47 ("After the Chair of the Election Board receives the authorization of the Election, the Chair of the Secretarial Election Board will conduct the election following the procedures set out in" §§ 81.19–81.45).  The version of the Nation's

constitution in effect in 2022 provides for the approval of amendments in line with the OIWA.[4]

As such, a Secretarial election is a federal (not tribal) election administered by the Department's Bureau of Indian Affairs ("BIA"), which can be held to adopt, amend, or revoke tribal constitutions.[5]  *Id.* §§ 81.1(a), 81.4; *see also Cheyenne River Sioux Tribe v. Andrus*, 566 F.2d 1085, 1088 (8th Cir. 1977) ("It is not merely the number or type of federal involvements which characterize these elections as federal . . . .  Rather, it is the source of the Secretary's regulatory authority over these elections, such authority having congressional and not tribal, origin.").  Unless certain exceptions apply, such elections are conducted entirely pursuant to 25 C.F.R. pt. 81.  25 C.F.R. § 81.2(b).

A Secretarial election is requested through the enactment of a tribal document (such as an ordinance or resolution) or through a signed petition.  *Id.* § 81.6(a).  The request must include the proposed amendment and a list of tribal members who will be at least 18 years old within 120 days of the request and who meet any other voting restrictions a tribe has enacted for voting in a Secretarial election.  *Id.* § 81.6(a)(2), (b).  If the proposed document does not contain any provisions contrary to applicable law, the Authorizing Official will issue a memorandum to the Local Bureau Official[6] (1) approving

---

[4] "Amendments to this Constitution and the attached Bylaws may be proposed by a majority vote of the Business Committee or by a petition signed by 30 percent of the adult members of the Nation, and if approved by the Secretary of the Interior shall be submitted to a referendum vote of the members of the Nation, and shall be effective if approved by a majority vote."  (ECF No. 2-2 at 3.)

[5] These elections are referred to as "Secretarial" because they are governed by the authority of the Secretary and her designees.  *See LaRose v. U.S. Dep't of the Interior*, 659 F. Supp. 3d 996, 999 (D. Minn. 2023).

[6] The "Authorizing Official" is "the [BIA] official with delegated Federal authority to authorize a Secretarial election."  25 C.F.R. § 81.4.  The "Local Bureau Official" is "the Superintendent, Field Representative, or other official having delegated Federal administrative responsibility" under 25 C.F.R. pt. 81.  25 C.F.R. § 81.4.

the proposed amendments; (2) authorizing the Local Bureau Official to call and conduct the Secretarial election within 90 days of the tribe's request; (3) attaching the language to be voted upon; (4) attaching the Certificate of Results of Election to be returned after the election is complete; and (5) advising that no changes can be made to these documents without the Authorizing Official's prior approval. *Id.* § 81.46(a).

The Local Bureau Official then appoints the Chair of the Secretarial Election Board and notifies the tribe that it needs to appoint at least two tribal members to the Board. *Id.* § 81.46(b). The Secretarial Election Board then conducts the Secretarial election. *Id.* § 81.21. The Board sets an election date and mails out a notice packet that includes the proposed amendments, a voter registration form, and the registration deadline. *Id.* §§ 81.20, 81.23(a), 81.24(b). The packet is distributed to all persons on the Eligible Voters List, *id.* § 81.22(b), which is compiled using the list provided in the tribe's initial request, *id.* § 81.22(a) ("The Secretarial Election Board . . . [u]ses the list provided in the tribal request as the basis for the Eligible Voters List . . . .").

Tribal members who are on the Eligible Voters List must then register if they want to vote in the Secretarial election. *Id.* §§ 81.27, 81.29. After the registration deadline has passed, the Board confirms that the registrations were received on-time; individuals who timely-submitted registration forms are placed on the Registered Voters List. *Id.* § 81.22(c), (e). The exclusion, inclusion, or omission of a name on the Registered Voters List can be challenged. *Id.* §§ 81.32, 81.33. Once the Board resolves all challenges, it prepares an official ballot. *Id.* § 81.34. Secretarial elections are conducted entirely by mail, unless the tribe's governing document provides otherwise. *Id.* § 81.35(a). After the deadline for receiving ballots has passed, the Board counts the ballots and certifies the

results.  *Id.* §§ 81.38, 81.39, 81.41.  Election results can then be challenged by any person

on the Eligible Voters List who submitted a voter registration form.  *Id.* § 81.43.

If any of the challenges to an OIWA Secretarial election are sustained—and if they

have an effect on the outcome of the election—the Authorizing Official must authorize a

recount or call for a new Secretarial election.  *Id.* § 81.48(a).  If such challenges are denied

or dismissed, then the Authorizing Official will simply determine whether at least 30% of

the registered voters casted votes (as required by federal law, unless the tribe's governing

document requires a different percentage) and whether the voters ratified or rejected the

proposed amendment.  *Id.* § 81.48(b).  The Authorizing Official then notifies the BIA

director and the tribe (1) of any decisions on challenges; (2) of the outcome of the voting;

(3) that the proposed amendments become effective as of the date of the Secretarial

election; and (4) that the decision is a final agency action.  *Id.* § 81.48(c).

### B.    The Allegations—The Nation's 2023 Secretarial Election[7]

#### 1.    Plaintiffs and the Seneca-Cayuga Nation

The Seneca-Cayuga Nation ("Nation") is a federally recognized Indian tribe based

in northeastern Oklahoma.  (ECF No. 2 ¶ 12.)  *See also* Indian Entities Recognized by and

Eligible to Receive Servs. from the U.S. Bureau of Indian Affs., 89 Fed. Reg. 944, 946 (Jan.

8, 2024).  The Nation's Constitution refers to its citizens as "members."  Seneca-Cayuga

Nation Const. art. III.[8]

---

[7] Because the Federal Defendants' motion to dismiss is a facial attack on the Court's
subject-matter jurisdiction, these allegations are drawn from Plaintiffs' complaint and the
attached documents.  (*See* Section II(A)(1), *infra*.)

[8] Plaintiffs attach the pre-2023 version of the Nation's constitution and by-laws to their
complaint (the "2014 Constitution").  (ECF No. 2-2.)  The Nation currently recognizes the
version of the constitution and by-laws that was amended in the 2023 Secretarial election
(the   "2023   Constitution").    The   2023   Constitution   may   be   found   at
https://sctribe.com/government/constitution-bylaws (last visited Sept. 20, 2024).

The General Council is the Nation's "supreme governing body" and is made up of all adult Nation members.  (ECF No. 2 ¶ 12.)  *See also* Seneca-Cayuga Nation Const. art. IV.   The Business Committee handles the day-to-day operations of the Nation and has the power to "transact business and otherwise speak or act on behalf of the Nation in all matters on which the Nation is empowered to act."  (ECF No. 2 ¶ 13.)  *See also* Seneca-Cayuga Nation Const. art. VI.   The Business Committee is comprised of the Nation's Chief, Second Chief, Secretary/Treasurer, and four elected Councilmen.  *Id.* art. V & VI.

Plaintiffs are members of the Nation who once served on its Business Committee.  (ECF No. 2 ¶¶ 9–11.)

### 2.   Election Request and Tribal Membership Issues

From August 2022 through January 2023, the Business Committee passed a series of resolutions requesting the BIA conduct a Secretarial election to amend five different provisions of the Nation's Constitution and By-Laws.[9]  (*Id.* ¶ 73; ECF No. 2-29 at 1–23, 27–55, 73–88, 97–114.)   Specifically, these amendments would lower the quorum requirement for a General Council meeting; lower the number of signatures needed to request a General Council Special Meeting; adopt a specific parliamentary procedure for meetings; clarify when the Nation's elected officers take and leave office; and, most relevant to this suit, broaden the Nation's membership eligibility requirements.  (ECF No. 2 ¶ 73.)

Prior to the 2023 Secretarial election, Article III of the Nation's Constitution provided that membership in the Nation would consist of the following:

1.  All persons of Indian Blood whose names appear on the official census roll of the Nation as of January 1, 1937[.]

---

[9] The Nation began the Secretarial election process in August 2022 but did not perfect its request until early 2023.  (*See* ECF No. 2-29 at 1–23; ECF No. 2-33 at 1.)

2. All children born since the date of said roll, both of whose parents are members of the Nation.

3. Any child *born of a marriage* between a member of the Seneca-Cayuga Nation and a member of any other Indian tribe who chooses to affiliate with the Seneca-Cayuga Nation.

4. Any child *born of a marriage* between a member of the Seneca-Cayuga Nation and any other person, if such child is admitted to membership by the Council of the Seneca-Cayuga Nation.

(*Id.* ¶ 53; ECF No. 2-2 at 1 (emphasis added).)  The proposed amendment would change Article III in its entirety to: "The membership of the Seneca-Cayuga Nation shall consist of all persons of Indian blood whose names appear on the official census roll of the Nation as of January 1, 1937, *and their lineal descendants*."  (ECF No. 2 ¶ 73 (emphasis added).) This change would void the "born of a marriage" clause and allow individuals to become members if their lineage could be traced back to an original Nation member.

Both tribal membership and the "born of a marriage" clause have been contested issues within the Nation over the last several years.  In 2017, then-Chief Fisher sent two letters to the BIA requesting it perform an audit of the Nation's membership roll "to determine who meets the constitutional requirements for membership."  (*Id.* ¶¶ 55, 57; *see also* ECF Nos. 2-23 & 2-25 (letters to BIA).)  Fisher wrote to the BIA after the Court of Indian Offenses[10] found a former Chief ineligible for membership, because the man listed as the father on his birth certificate died over a year before his birth.  (ECF No. 2-23 at 1–2; ECF No. 2-25 at 1.)  Fisher also noted that many Nation members had similar

---

[10] The Court of Indian Offenses (or "CFR Court") serves as the tribal court for the Nation. *See, e.g.,* 25 C.F.R. § 11.102 (noting that the CFR Court provides for the administration of justice in Indian country where tribal courts have not been established); *Tillet v. Lujan*, 931 F.2d 636, 640 (10th Cir. 1991) (noting that CFR Courts function as tribal courts); 25 C.F.R. § 11.100(a) (noting that the list of areas where CFR Courts are established will be posted on the BIA's website); Court of Indian Offenses, Bureau of Indian Aff., https://www.bia.gov/CFRCourts (last visited Sept. 20, 2024) (noting the Seneca-Cayuga Nation is located in the Miami Agency CFR Court).

qualification issues.  (ECF No. 2-23 at 2; *see also* ECF No. 2-25 at 1 (claiming "the issue of qualification for membership is widespread within the Nation").)  The BIA rejected Fisher's request for an audit in his first letter and never responded to his second letter.[11]  (ECF No. 2 ¶¶ 56–57.)

In 2018, Plaintiffs, who then served on the Business Committee, hired a private company to conduct an audit of the Nation's membership rolls.  (*Id.* ¶¶ 58–59.)  According to Plaintiffs, the results revealed there were 451 members who did not meet the constitutional requirements for enrollment and thousands of members whose files were missing documents establishing membership—in most cases, a marriage certificate.  (*Id.* ¶ 60; *see also* ECF No. 2-8 (letter regarding audit results)).)  In 2019, a Secretarial election was held on whether to remove the "born of a marriage" clause from the Nation's Constitution, but the measure did not pass.  (*See* ECF No. 2-17 at 1.)  Plaintiffs further contend two current members of the Business Committee, Cynthia Donohue Bauer and Amy Nuckolls, are ineligible for membership because they were not born of an eligible marriage and have failed to provide evidence establishing otherwise.  (ECF No. 2 ¶¶ 64–70.)

### 3.    Crow's Challenge to the Registered Voters List

On February 22, 2023, the BIA authorized a Secretarial election over the five new constitutional amendments.  (*Id.* ¶ 77; ECF No. 2-33.)  A Secretarial Election Board was formed, consisting of BIA representative Kathy Greenhaw ("Greenhaw") and Business Committee members Curt Lawrence and Cynthia Donohue Bauer.  (*Id.*)  The Board sent

---

[11] In a letter dated May 9, 2017, Paul Yates, then-Superintendent of the BIA's Miami Agency, responded that he could not assist the Nation with an audit, because the Court of Indian Offenses case Fisher cited was still pending on appeal—a fact that Fisher disputed in his second letter.  (ECF No. 2 ¶¶ 56–57.)

out the Secretarial Election Notice Packet to the persons listed on the Eligible Voters List. (ECF No. 2 ¶ 78.)  Plaintiffs contend the Eligible Voters List contained tribal members that did not meet the criteria for Nation membership.[12]  (*Id.* ¶ 76.)

On March 23, 2023, Crow issued a written challenge to the Registered Voters List pursuant to 25 C.F.R. § 81.32.[13]  (*Id.* ¶ 81; *see also* ECF No. 2-14 ¶ 9 & ECF No. 2-17 (challenge).)  Citing the results of the 2018 audit, Crow contended there were hundreds of persons who were members of the Nation, but who he believed did not meet the qualifications for membership.[14]  (ECF No. 2-17 at 1 ("Due to the restraints of the Seneca-Cayuga Nation Constitution, many of the people who are currently on the roll are not qualified to be members.").)  Crow's allegations included Donohue Bauer.  (*Id.* at 2.)  Crow argued that, because these previously recognized tribal members "do not qualify to be members" of the Nation, "they do not qualify to vote" in the Secretarial election.  (*Id.*)

On March 30, 2023, the Secretarial Election Board issued a decision denying Crow's challenge.  (ECF No. 2 ¶ 83; *see also* ECF No. 2-18 (letter denying challenge).)  The Board construed Crow's challenge as a challenge to the 26 individuals (and one Board

---

[12] Plaintiffs further maintain the Secretarial Election Board made other errors, such as failing to mail out notice packets to all eligible members and failing to post proper notice of the Secretarial election as required under 25 C.F.R. § 81.25.  (ECF No. 2 ¶ 80.)

[13] Crow's letter never states that he is challenging the Registered Voters List, nor does it cite the relevant regulatory provision.  (ECF No. 2-17.)  Instead, Crow broadly challenges the "Secretarial Election Voters List," making it unclear whether he is referring to the Eligible Voters List or the Registered Voters List.  Regardless, the Board interpreted Crow's challenge as to the Registered Voters List.  (ECF No. 2-18.)

[14] Crow did not assert that these persons had never been recognized by the Nation as members—quite the opposite.  He acknowledged that the supreme governing body of the Nation, the General Council, had voted to enroll the individuals.  (*See* ECF No. 2-17 at 2 ("Even though the General Council voted to illegally enroll people who do not meet qualifications of the Constitution, the BIA decision of 1991 clearly states 'the fact that the **General Council is the supreme governing body, it does not give it the authority to violate the tribal Constitution'.**").

member) who appeared on the Registered Voters List.[15]  (*Id.*)  In the decision, Greenhaw

provided the following reasoning for denying Crow's challenge:

> Since a Secretarial [e]lection is a federal process, the rules and regulations prescribed for conducting such an election are found in Title 25, Code of Federal Regulations, Part 81.  The Registered Voters List is defined in the regulations at Section 81.4 and is the list of all Registered Voters.  A Registered Voter is defined in the Regulations as an "eligible voter who has registered to vote in the Secretarial election."  An Eligible Voter is defined in the regulations as a "tribal member who will be 18 years of age or older o[n] the date of the Secretarial election."  In this specific instance, the Eligible Voters List was compiled by the Nation's governing body and submitted with the Nation's request for a Secretarial election.
>
> No evidence was provided to the Board to show that these 26 individuals (and Board member) are not members as of today.  Therefore, it is possible that these 26 individuals (and Board member) may have provided the documents and may be in compliance since the enrollment audit was completed in 2018.

(*Id.*)  The Board then dismissed Crow's challenge; the Secretarial election process contin-

ued; and all five proposed amendments to the Nation's Constitution passed.  (ECF No. 2

¶¶ 83, 87–88.)  Plaintiffs did not separately challenge the results of the election under 25

C.F.R. § 81.43.

Plaintiffs contend the Board's decision to deny Crow's challenge was arbitrary and

capricious and seek judicial review under the APA.[16]  (*Id.* ¶¶ 84, 148–158.)  In the body of

their claims, Plaintiffs seek two forms of relief:  (1) an order declaring that the Federal

Defendants' actions diminished the rights of Plaintiffs and other duly enrolled Nation

members and (2) an order vacating the results of the Secretarial election.  (*Id.* ¶¶ 156,

---

[15] It appears this number was reached by cross-refencing the list of the 451 tribal members who did not qualify for enrollment with the Registered Voters List.  (*Compare* ECF No. 2-17 at 3–92 (list of ineligible members), *with* ECF No. 2-35 at 59–71 (Registered Voters List).)

[16] Plaintiffs also brought a breach of treaty claim (ECF No. 2 ¶¶ 159–66), but they have now withdrawn that claim (ECF No. 41 at 29).

158.)  At the conclusion of their complaint, they also seek orders (3) removing Donohue Bauer and Nuckolls from the Business Committee and (4) instructing the BIA to conduct an audit of the Nation's membership rolls.  (*Id.* at 36–37.)

## II.   Analysis

Federal Defendants move to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* ECF No. 25.)  They contend the Court lacks subject-matter jurisdiction, because (1) Plaintiffs have failed to exhaust administrative remedies and (2) the Court cannot review tribal enrollment decisions.  (*Id.* at 15–22.) They further contend Plaintiffs have failed to state a claim for which relief can be granted, because (1) the Board's decision was not arbitrary and capricious and (2) the Court has no authority to order the BIA to perform an audit of the Nation's membership rolls.  (*Id.* at 23–25.)

### A.   Standard of Review

#### 1.   Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction," and the party asserting federal jurisdiction bears the burden of establishing it.  *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (citation and internal quotation marks omitted).  A 12(b)(1) motion typically takes one of two forms.  *Id.* at 1148 n.4.  That is, the party challenging jurisdiction can either "(1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004)).

In a facial attack, the Court accepts the allegations in the complaint as true, *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), and applies the same standards as are applicable to a Rule 12(b)(6) motion, *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).  This includes considering "documents referred to in the complaint if [they] are central to the plaintiff's claim and the parties do not dispute [their] authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).[17]

In a factual attack, the Court does not presume the truthfulness of the complaint's factual allegations but, instead, has wide discretion to consider other evidence. *Rodriguez-Aguirre*, 264 F.3d at 1203.

Despite Plaintiffs' assertion that the Federal Defendants' 12(b)(1) arguments are a factual attack (ECF No. 41 at 9–10), the defendants have not attached any evidence refuting Plaintiffs' allegations.  The Federal Defendants essentially argue that, even if these allegations are true, the Court would still lack subject-matter jurisdiction.  The Court, therefore, construes the Federal Defendants' 12(b)(1) arguments as a facial attack.

### 2. Rule 12(b)(6) and Reviewing Agency Action under the APA

A traditional Rule 12(b)(6) motion is generally not the appropriate vehicle for reviewing claims that an agency action violated the APA.  When a district court conducts such a review, it acts as an appellate court.  *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994).  This means the court "resolves questions of law based on the administrative record, regardless of whether a party has moved for dismissal, summary judgment, or judgment on the pleadings." *Aviva Life & Annuity Co. v. FDIC*,

---

[17] Such consideration does not convert a facial attack into a factual attack.  *See, e.g., Am. Nat'l Prop. & Cas. Co. v. Whisenant*, No. CV 19-1024, 2020 WL 5366810, at *4 (D.N.M. Sept. 8, 2020).

No. 09-4205, 2010 WL 2025233, at *1 (D. Kan. May 20, 2010) (citing *Marshall Cnty.*
*Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993)).   This is because a
plaintiff seeking judicial review of agency action "presents no factual allegations" in the
complaint, but "only arguments about the legal conclusion to be drawn about the agency
action." *Marshall Cnty.*, 988 F.2d at 1226.

The Tenth Circuit has made it clear that, when acting in this appellate role, "it is
improper for a district court to use methods and procedures designed for trial."
*Olenhouse*, 42 F.3d at 1564.  Instead, the Court must review the agency's decisionmaking
process and conduct a plenary review of the record.  *Id.* at 1576.  The Court can affirm
only on the grounds articulated by the agency itself but generally will affirm if that deci-
sion is supported by substantial evidence.  *Id.* at 1576–77; *see also id.* at 1574 (noting the
essential function of judicial review is determining (1) whether the agency acted within
the scope of its authority; (2) complied with prescribed procedures; and (3) did not act in
a way that is otherwise arbitrary, capricious, or an abuse of discretion).

This means the Court must be able to review the "record as it existed before the
agency." *Id.* at 1576; *see also* 5 U.S.C. § 706 ("the court shall review the whole record or
those parts of it cited by a party, and due account shall be taken of the rule of prejudicial
error").  "The district court may not rely on counsel's statements as to what was in the
record; the district court *itself* must examine the administrative record and *itself* must
find and identify facts that support the agency's action." *Olenhouse*, 42 F.3d at 1576.

**B.     The Court Has Subject-Matter Jurisdiction Over Plaintiff Crow's APA Claim and Only Plaintiff Crow's Claim**

**1.     Exhaustion of Administrative Remedies**

**a)     Plaintiff Crow has exhausted his administrative remedies.**

Defendants first argue the Court does not have subject-matter jurisdiction because Plaintiffs have failed to exhaust administrative remedies, a prerequisite to the waiver of sovereign immunity contained in the APA.  (ECF No. 25 at 15–16; ECF No. 47 at 2–5.) Defendants contend that, in addition to challenging the Secretarial election's Registered Voters List under 25 C.F.R. § 81.32, Plaintiffs were also required to challenge the Secretarial election's results under 25 C.F.R. § 81.43.  (*Id.*)

It is axiomatic that "the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  "The government consents to be sued only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text."  *United States v. Murdock Mach. & Eng'g Co.*, 81 F.3d 922, 930 (10th Cir. 1996) (cleaned up).  The APA contains a limited waiver of sovereign immunity for declaratory and injunctive relief claims against the United States and its agencies.  *See* 5 U.S.C. § 702.[18]  But, to take advantage of this waiver, a plaintiff must challenge a final agency action and exhaust administrative

---

[18] "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . ., is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . ." 5 U.S.C. § 702.  This waiver of sovereign immunity is limited because it does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  *Id.*

remedies. *Blackbear v. Norton*, 93 F. App'x 192, 193 (10th Cir. 2004) (unpublished) (citing *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 549 (10th Cir. 2001)).[19]

Under the administrative exhaustion doctrine, "a party is not entitled to judicial relief for supposed or threatened injury until the *prescribed administrative remedies have been exhausted.*" *Sac & Fox Nation v. Norton*, 585 F. Supp. 2d 1293, 1300–01 (W.D. Okla. 2006) (emphasis added); *see also Reiter v. Cooper*, 507 U.S. 258, 269 (1993) ("Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed."); *Dalton v. City of Las Vegas*, 282 F. App'x 652, 656 (10th Cir. 2008) (unpublished) ("The APA requires exhaustion of administrative remedies before federal jurisdiction will lie."). Defendants maintain that, because the remedies Plaintiffs seek include, in part, an order to vacate the Secretarial election, administrative exhaustion required Plaintiffs to challenge the results of the election before bringing suit. (ECF No. 47 at 2–5.) The Court disagrees.

The regulations provide two distinct, mutually exclusive challenges at two different stages of the Secretarial election process. *See* 25 C.F.R. §§ 81.32, 81.43. First, before the election has occurred, the "inclusion or exclusion or omission of a name on the Registered Voters List" can be challenged. *Id.* § 81.32(a). The regulations do not limit who can bring a § 81.32 challenge, but the challenge must include the names of the affected individuals; the reasons why they should be removed from or added to the list; and other supporting documentation. *Id.* § 81.32(a)(1)–(3). The regulations are clear that § 81.32

---

[19] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

determinations "are final for the purpose of determining who can vote in the Secretarial election." *Id.* § 81.33.  Second, after the election has occurred, a more limited group of individuals—any person on the Eligible Voters List who submitted a voter registration form—can also challenge the election's results.  *Id.* § 81.43.

There is nothing in the regulations indicating that a person must assert a challenge under § 81.43 in order to preserve his rights to seek judicial review of the denial of a challenge under § 81.32.  Indeed, in certain circumstances, it would be *impossible* for an individual aggrieved by the denial of a § 81.32 challenge to even *make* a § 81.43 challenge.  For example, an adult tribal member could be improperly excluded from the Eligible Voters List (and therefore not eligible to register[20]) and challenge the "omission of a name on the Registered Voters List."[21]  25 C.F.R. § 81.32(a).  If the Board rejected that challenge, under the Federal Defendants' reading of the regulation, that person would have no recourse.  By definition, such person would not have been on the "Eligible Voters List" and could not "challenge the results of the Secretarial election."  *Id.* § 81.43.

The cases cited by the Federal Defendants do not hold otherwise.  In *LaRose*, the plaintiff brought suit to challenge the results of a Secretarial election on the grounds that the election lacked the 30% tribal quorum.  659 F. Supp. 3d at 1000.  While other tribal members did challenge the election on that basis, LaRose was not one of those

---

[20] *See* 25 C.F.R. § 81.4 (defining "Registered Voter" as "an <u>eligible voter</u> who has registered to vote in the Secretarial election" (emphasis added)).

[21] The documents attached to Plaintiffs' complaint show how easily a situation like this might arise.  The BIA apparently rejected the Nation's original request for a Secretarial election, because the voter list provided by its attorney "was dated August 18, 2022 (which could possibly disenfranchise any potential voters who may turn 18 before February 1, 2023 . . .)."  (ECF No. 2-29 at 7.)  If the BIA Superintendent had not caught this error before the Registered Voters List was prepared, there easily could have been tribal members who were inadvertently excluded from the Eligible Voters List who could have brought a challenge to their omission from the Registered Voters List.

challengers.  *Id.* at 1005.  The district court, therefore, found that LaRose failed to exhaust his administrative remedies and offered no valid justification for that failure; as such, the court dismissed his claims.  *Id.* at 1006.  The *LaRose* case says nothing about whether a person who raises one type of challenge (to the Registered Voters list under § 81.32) must also raise another type of challenge (to the election results under § 81.43) in order to exhaust administrative remedies.  In fact, *LaRose* does not mention § 81.32 at all.

Meanwhile, the issue of exhaustion was not even raised in *Aranda v. Sweeney*, No. 19-cv-00613, 2019 WL 1599178 (E.D. Cal. Apr. 15, 2019).  In that case, the plaintiffs filed an ex parte motion for a temporary restraining order, seeking to stop an upcoming Secretarial election after their challenge to the Registered Voters List was rejected.  *Id.* at *1–2.  The court found the plaintiffs did not show the "irreparable harm" necessary for such injunctive relief, in part because there was an alternative remedy available—the plaintiffs could challenge the finalization of the election's results after it occurred, using the same arguments they were presenting for the injunction.[22]  *Id.* at *2–3.

Plaintiffs have properly exhausted the prescribed administrative remedies and did not have to separately challenge the Secretarial election's results prior to bringing suit. Plaintiffs seek judicial review of the Secretarial Election Board's decision to deny Crow's

---

[22] Contrary to the Federal Defendants' arguments, it is not clear that the *Aranda* court found this challenge would necessarily be made under 25 C.F.R. § 81.43—"It is unclear whether Plaintiffs have standing to make a § 81.43 challenge to the BIA.  But at this stage of the litigation, the Court does not see any reason why Plaintiffs could not challenge the BIA's decision to finalize the results of the election under the APA with the very same argument they used to challenge the Registered Voters List."  *Id.* at *3 (citation omitted).

§ 81.32 challenge.  (ECF No. 2 ¶¶ 84, 149–150.)  That decision was a final agency action.[23]

*See* 25 C.F.R. § 81.33.  Crow is entitled to seek judicial review of this decision.

### b)   The other Plaintiffs could not bring an APA claim here.

To the extent Channing and Fisher are bringing APA claims, however, the Court would have no jurisdiction to hear them.  First, as a preliminary matter, it is not entirely clear whether Channing or Fisher have asserted any APA claims in the Complaint.  Instead, the APA claims begin with an allegation that "Petitioner *Crow* has standing to press this Administrative Procedure Act claim."  (ECF No. 2 ¶ 148 (emphasis added).)  However, Plaintiffs go on to assert that Channing and Fisher are "similarly situated individuals" who "have suffered an injury by invasion of their legally protected interests . . . ."  (*Id.* ¶ 151.)  In their response brief, Plaintiffs do not assert that anyone other than Crow exhausted administrative remedies, but they do assert that they all have constitutional standing as being injured by the amendments to the Nation's constitution.  (ECF No. 41 at 14–15.)  When addressing sovereign immunity, however, Plaintiffs' standing is neither here nor there.  From the face of the complaint, it is clear that neither Channing nor Fisher ever asserted any sort of challenge during the Secretarial election.  As such, they have not

---

[23] The Federal Defendants do not offer any legal authorities or even appear to dispute that the Board's decision was a final agency action.  And by the usual definitions, it was.  "As a general matter, two conditions must be satisfied for agency action to be 'final':  First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).  Here, the decision by the Secretarial Election Board was "final" and therefore the consummation of the agency's decisionmaking process.  25 C.F.R. § 81.33.  And, it determined the rights of persons to vote in the Secretarial election, which has legal consequences, including a determination of voter eligibility and—potentially—election results.

exhausted their administrative remedies and cannot assert any claims based on either the Registered Voters List or the results of the election.

To the extent Plaintiffs Channing and Fisher have brought APA claims against the Federal Defendants, those claims will be dismissed.  The Court will consider the remaining arguments only as they apply to Crow's APA claims.

### 2. Federal Courts Have Jurisdiction to Review Agency Action Involving Tribal Membership Issues

Defendants next argue Crow's claims must be dismissed because federal courts do not have jurisdiction over tribal membership disputes.  (ECF No. 25 at 18–22.)

"Indian tribes are separate sovereigns with the power to regulate their internal and social relations, including their form of government and tribal membership." *Fletcher v. United States*, 116 F.3d 1315, 1326–27 (10th Cir. 1997).  As such, absent Congressional action, a tribe generally has "complete authority to determine all questions of its own membership." *Martinez v. S. Ute Tribe*, 249 F.2d 915, 920 (10th Cir. 1957); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978) ("A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community.").  This means that tribal membership issues, including enrollment, are typically "outside the purview" of federal court jurisdiction.  *Hendrix v. Coffey*, 305 F. App'x 495, 496 (10th Cir. 2008).

However, Federal courts have subject-matter jurisdiction when, like here, "a suit is not a direct challenge to a tribe's enrollment decision, but is instead a challenge to agency action" under the APA.  *Aguayo v. Jewell*, 827 F.3d 1213, 1222 (9th Cir. 2016) ("When a plaintiff has previously sought relief from the BIA, federal jurisdiction is proper to the extent that the plaintiff seeks review of the agency's decision . . . ."); *see also id.* at 1223 ("the propriety of agency action is a federal question over which we have jurisdiction,

even where the agency applied tribal law in the context of a membership dispute").   In this case, Crow seeks review of the Board's decision to deny his challenge.   Crow, in effect, argues that the Board acted arbitrarily and capriciously when it chose to rely on the Nation-supplied membership list in spite of his arguments that the Nation had unconstitutionally admitted certain members.   In deciding Crow's APA appeal, the Court will "engage in a substantive review of the record to determine if the agency considered relevant factors [and] articulated a reasoned basis for its conclusions." *Olenhouse*, 42 F.3d at 1580.   The Court will not be making a determination that encroaches on the Nation's sovereignty.   Although related to tribal enrollment, the Court has subject-matter jurisdiction to review the Board's decision.   *See Aguayo*, 827 F.3d at 1222–23 (finding court has jurisdiction to determine whether agency action related to tribal disenrollment was arbitrary and capricious); *Alto v. Black*, 738 F.3d 1111, 1123 (9th Cir. 2013) (finding court has jurisdiction to determine whether Assistant Secretary's disenrollment order was arbitrary and capricious).[24]

---

[24] This does not mean that, even if Crow were successful on the merits of his APA claim, the Court could award all of the relief sought.   For example, in the Complaint, Crow seeks a Court order removing Defendants Nuckolls and Donohue Bauer from the Nation's Business Committee because "they do not meet the Constitutional criteria for enrollment with the Nation."   (ECF No. 2 at 36.)   Crow offers no basis from which the Court could find that the Federal Defendants have the authority to remove members of the Nation's day-to-day governing body, much less that this Court has authority under the APA to require the Federal Defendants to attempt such an action.   Similarly, while Crow seeks an order setting aside the results of the Secretarial election, such relief is not necessarily available here.   *See Olenhouse*, 42 F.3d at 1575 (noting that, if the agency's decision is defective, "the reviewing court may supplement the record or remand the case to the agency for further proceedings"); *see also* 25 C.F.R. § 81.45(a) (describing the circumstances in which the Authorizing Official calls for a new Secretarial election).

The Court finds a basis for subject-matter jurisdiction in the allegations pled in the complaint and rejects the Federal Defendants' facial attack at this time.[25]

### C.   The Court Cannot Reach of the Merits of Crow's APA Claim Here

Crow argues that the Board's decision to deny his Registered Voters List challenge was arbitrary and capricious.  (ECF No. 2 ¶ 84; ECF No. 41 at 20–26.)  Federal Defendants maintain the Board "acted in accordance with the federal regulations" in denying Crow's challenge.  (ECF No. 25 at 23.)

The Court, however, cannot reach this question in the posture it was presented.  As noted above, to rule on an APA challenge, the Court must conduct a plenary review of the actual record before the agency and make certain determinations.  (*See* Section II(A)(2), *supra*.)  Here, however, the Court has no such record, the parties having assumed this issue could be decided on a Rule 12(b)(6) motion based on the allegations in the complaint.  The Court recognizes that the documents attached to the complaint are extensive and include the BIA's response to a FOIA request from Plaintiffs' counsel.  (ECF Nos. 2-28–2-32.)  However, that FOIA request seeks information that may or may not be part of the administrative record in this case.  (*See, e.g.,* ECF No. 2-28 at 1 (noting the request sought "copies of all correspondence, in any form, to and from [the Nation's counsel] . . . that concern the membership, membership rolls, resolutions of the Seneca-Cayuga Nation, Courts, and Secretarial Elections of the Seneca-Cayuga Nation and its elected representatives" between "January 1, 2021, and July 10, 2023").)  *See New York v. Salazar*,

---

[25] This decision does not foreclose the Federal Defendants from arguing subject-matter jurisdiction when this case reaches the merits.  *Cf.* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.");  *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (noting subject-matter jurisdiction may be raised at any stage in the litigation).

701 F. Supp. 2d 224, 234–35 (N.D.N.Y. 2010) (noting that the results of a FOIA request are "specific to the actual requests made" and are not the same as an administrative record), *aff'd,* 2011 WL 1938232 (N.D.N.Y. Mar. 8, 2011).  Even a brief review of the FOIA response indicates that it is not a complete record of the agency action in this case—it does not include Crow's challenge or the Board's final response to that challenge.  The Court cannot rule on the parties' legal arguments without this record, and the motion to dismiss will be denied.  *Cf. Nw. Env't Advocs. v. United States Env't Prot. Agency*, No. 21-CV-01136, 2022 WL 1001777, at *4 (D. Or. Apr. 4, 2022) (denying motion to dismiss for lack of complete administrative record).[26]

The Court will, instead, set a schedule for the submission of an administrative record and appellate briefing by the parties.

## III.   Conclusion

IT IS THEREFORE ORDERED that *Defendant United States of America's Motion to Dismiss Pursuant to Federal Rules 12(b)(1) and 12(b)(6)* (ECF No. 25) is GRANTED as to Plaintiffs Sarah Sue Channing and William Fisher and DENIED as to Plaintiff Lester Jerry Crow.  To the extent Plaintiffs Channing and Fisher have asserted claims against the Federal Defendants under the APA, those claims are DISMISSED WITH PREJUDICE.  As for Plaintiff Crow's claims, Federal Defendants' facial challenge to this Court's subject-matter jurisdiction is denied without prejudice to revisiting the issue, if appropriate, on consideration of the merits.

---

[26] To the extent *Northwest Environmental Advocates* appears to endorse use of a motion for summary judgment to resolve an APA action, such a route is foreclosed in this Court by *Olenhouse*.  *See* 42 F.3d at 1579–80 (referring to motions for summary judgment as "impermissible devices" that are prohibited in administrative appeals).

IT IS FURTHER ORDERED that a status and scheduling conference is set for October 10, 2024, at 10:00 a.m., in Magistrate Courtroom #2.  Counsel for Plaintiff Crow and the Federal Defendants should be prepared at that conference to discuss an appropriate timeline for submission of the administrative record and briefing.

ORDERED this 24th day of September, 2024.


_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT