**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SARAH SUE CHANNING, LESTER JERRY CROW, and WILLIAM FISHER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SENECA-CAYUGA NATION; SENECA-CAYUGA BUSINESS COMMITTEE MEMBERS CHARLES DIEBOLD, CURT LAWRENCE, KIM GUYETT, CYNTHIA DONOHUE BAUER, AMY NUCKOLLS, HOYIT BACON, TONYA BLACKFOX and Does 1–10; DOUG BURGUM, Secretary of the Interior;[1] SCOTT DAVIS, Acting Assistant Secretary— Indian Affairs;[2] UNITED STATES DEPARTMENT OF THE INTERIOR, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 23-cv-00458-SH |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Lester Jerry Crow seeks judicial review of an administrative decision of the Secretary of the Interior that allowed purportedly unqualified members of the Seneca-Cayuga Nation to vote in a Secretarial election.[3] Plaintiff has failed to show prejudice from any error that occurred, and the Court affirms the Secretary's decision.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Doug Burgum is substituted as defendant following his appointment as Secretary of the Interior on February 1, 2025.

[2] The Bureau of Indian Affairs has announced that Scott Davis is serving as senior advisor to the Secretary of the Interior, "exercising the delegated authority of the assistant secretary for Indian Affairs." https://www.bia.gov/person/scott-davis [https://perma.cc/C5MZ-A46V] (last visited July 29, 2025). Pursuant to Fed. R. Civ. P. 25(d), Scott Davis is substituted as defendant. For ease of reference, the undersigned will refer to Davis as the "Acting Assistant Secretary—Indian Affairs."

[3] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 44.)

## I. Background

Plaintiffs brought this suit on October 24, 2023, alleging claims relating both to their banishment and to an election to amend the Seneca-Cayuga Nation ("Nation") constitution. (ECF No. 2.) Many of Plaintiffs' allegations relate to a longstanding dispute regarding the alleged enrollment of persons who did not qualify for Nation membership under the constitution.

The Nation adopted its constitution in 1937 under the Oklahoma Indian Welfare Act ("OIWA"), 25 U.S.C. §§ 5201–5209. *See* Seneca-Cayuga Nation Const. pmbl. [4] Starting with that first constitution, the Nation's membership was restricted to the following:

1. All persons of Indian blood whose names appear on the official census roll of the [Nation] as of January 1, 1937.

2. All children born since the date of said roll, both of whose parents are members of the [Nation].

3. Any child born of a marriage between a member of the Seneca-Cayuga [Nation] and a member of any other Indian tribe who chooses to affiliate with the Seneca-Cayuga [Nation].

4. Any child born of a marriage between a member of the Seneca-Cayuga [Nation] and any other person, if such child is admitted to membership by the Council of the Seneca-Cayuga [Nation].

---

[4] The current version of the Nation's constitution and bylaws is in the administrative record (DOI 707–714) and is available on the Nation's website at https://sctribe.com/sites/default/files/2023ConstitutionandByLaws.pdf [https://perma.cc/CT34-FQAD]. The version in effect at the time of the parties' dispute is in the administrative record (DOI 147–154) and is available online at https://sctribe.com/sites/default/files/pdf/NEW-SENECA-CAYUGA-NATION-CONSTITUTION%20(1).pdf [https://perma.cc/6AKY-AGWH]. The Court will refer to this version as the "2014 Constitution."

*See* Const. of the Seneca-Cayuga Tribe of Okla., art. III (1937) (emphasis added). [5]

Plaintiffs allege that, over the years, various individuals were "enrolled as tribal members through fraud or mistake."  (ECF No. 2 ¶ 5.)  In particular, this membership dispute appears to relate to the "born of a marriage" provisions.  According to Plaintiffs, one of these provisions led to former Chief LeRoy Howard ("Howard") being found at some point ineligible for enrollment (and therefore candidacy), because the father listed on his birth certificate died before his conception.  (ECF No. 8-1 ¶¶ 8–10; ECF Nos. 2-23–2-25.)  This also allegedly led to Defendant Cynthia Donohue Bauer ("Donohue Bauer") being found ineligible by the Election Committee to run for a councilperson position in 2017, because her mother—a sibling of Howard—was similarly ineligible.  (ECF No. 2-6.)  Plaintiffs were on the Business Committee in 2017 when it upheld Donohue Bauer's ineligibility. [6]  (*Id.* at 3.)

According to Plaintiffs, in 2017, the Business Committee twice requested the Bureau of Indian Affairs ("BIA") conduct an audit of the Nation's rolls, but the requests were refused or ignored.  (ECF No. 2 ¶¶ 55–57.)  The Business Committee then engaged a firm to conduct an audit that, in 2018, allegedly found 1,187 properly enrolled members with complete records; 4,422 members with some missing records; and 451 members who should not have qualified for membership.  (*Id.* ¶ 60.)

---

[5]   The 1937 constitution is available at https://tile.loc.gov/storage-services/service/ll/llscd/37026809/37026809.pdf [https://perma.cc/5L4L-ZMAB]. Later amendments refer to the "Nation" instead of the "Tribe."  *See, e.g.*, 2014 Const.

[6] The Nation's Business Committee handles the day-to-day operations of the Nation and has the power to "transact business and otherwise speak or act on behalf of the . . . Nation in all matters on which the Nation is empowered to act."  Seneca-Cayuga Nation Const. art. VI.  It is comprised of the Nation's Chief, Second Chief, Secretary/Treasurer, and four elected Councilmen.  *Id.* arts. V–VI.  The Business Committee is subordinate to the General Council, which is the Nation's "supreme governing body."  *Id.* art. IV.  The General Council is made up of all adult Nation members.  *Id.*

At some point, Plaintiffs left office, and a new Business Committee was elected—one that includes Donohue Bauer and her relative, Defendant Amy Nuckolls ("Nuckolls"). (*Id.* ¶ 64.) According to Plaintiffs, the Nation's attorney, Scott Goode ("Goode") is another relative of Donohue Bauer's, and all three—Donohue Bauer, Nuckolls, and Goode—should not have been eligible to become tribal members. (*Id.* ¶¶ 70, 74.) Plaintiffs claim that the new government retaliated against them for their prior actions, including their prior enforcement of the Nation's membership requirements. (*Id.* ¶ 1.) Plaintiffs also claim that the new government proposed one of the constitutional amendments at issue in this case "to ratify the fraud" of those "lacking evidentiary support for their [membership] eligibility." (*Id.* ¶ 70.)

On September 23, 2024, the Court dismissed without prejudice Plaintiffs' claims against the Nation and its Business Committee members, finding a failure to exhaust tribal remedies. *See Channing v. Seneca-Cayuga Nation*, 2024 WL 4271569 (N.D. Okla. Sept. 23, 2024) ("*Channing I*"). On September 24, 2024, the Court dismissed with prejudice any claims asserted by Plaintiffs Sarah Sue Channing or William Fisher against the remaining defendants, finding a lack of subject-matter jurisdiction. *See Channing v. Seneca-Cayuga Nation*, 2024 WL 4284198 (N.D. Okla. Sept. 24, 2024) ("*Channing II*").

All that remains are the claims of Plaintiff Lester Jerry Crow ("Crow") under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Crow has brought these claims against the United States Department of the Interior (the "Department"), the Secretary of the Interior (the "Secretary"), and the Acting Assistant Secretary—Indian Affairs (collectively, the "Federal Defendants"). Crow argues the Secretary violated Department regulations and arbitrarily and capriciously rejected his challenge to the Registered Voters List in the 2023 Secretarial election. (ECF No. 2 ¶¶ 71–94, 149.) Crow

asks that the results of the election, therefore, be vacated.  (ECF No. 2 at 37; ECF No. 59 at 21.[7])

## II.    Standard of Review

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  A reviewing court shall hold unlawful and set aside agency action found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."  *Id.* § 706(2)(A), (D).  Agency action is presumed valid, and the challenging party bears the burden of proving otherwise.  *Am. Petrol. Inst. v. U.S. Dep't of the Interior*, 81 F.4th 1048, 1058 (10th Cir. 2023).

The "essential function of judicial review is a determination of (1) whether the agency acted within the scope of its authority, (2) whether the agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary, capricious or an abuse of discretion."  *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994).  Here, the parties do not dispute that the Department acted within the scope of its authority, leaving the latter two issues to be decided.[8]

Agency action is arbitrary and capricious if the agency:

(1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its

---

[7] Page numbers refer to those in the ECF header.

[8] Crow argues the Federal Defendants had authority "so long as" they complied with the applicable regulations.  (ECF No. 59 at 8.)  The Court understands this argument to be subsumed by his arguments regarding procedural irregularities and abuse of discretion.

decision on consideration of the relevant factors, or (4) made a clear error of judgment.

*OXY USA Inc. v. U.S. Dep't of the Interior*, 32 F.4th 1032, 1044 (10th Cir. 2022) (citation and internal quotation marks omitted); *see also Wyoming v. U.S. Dep't of the Interior*, No. 22-CV-247, 2024 WL 5264647, at *2 (D. Wyo. Dec. 31, 2024) ("determining whether agency action is arbitrary and capricious is generally the same as determining whether it was an abuse of discretion"). The Court bases this determination on a plenary review of the record as it existed before the agency. *Olenhouse*, 42 F.3d at 1576; *see also* 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party").

The scope of the arbitrary-and-capricious review is narrow and deferential. *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1038 (10th Cir. 2006). The Court is limited to determining whether the agency action was "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That is, the Court "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* The Court, however, cannot attempt to make up for deficiencies in the agency's reasoning, nor can it rely on the agency's post-hoc rationalizations. *Defs. of Wildlife v. U.S. Forest Serv.*, 94 F.4th 1210, 1220 (10th Cir. 2024); *see also Upper Green River All. v. U.S. Bureau of Land Mgmt.*, 598 F. Supp. 3d 1303, 1319 (D. Wyo. 2022) (noting the court cannot substitute its judgment for that of the agency).

In determining whether to set aside agency action, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. This means that, even if agency action violates the APA, "its error does not require reversal unless a plaintiff demonstrates prejudice resulting from the error." *Prairie Band Pottawatomie Nation v. Fed. Highway Admin.*, 684 F.3d 1002, 1008 (10th Cir. 2012). To demonstrate prejudice, the plaintiff

must show the agency's error affected the outcome. *Oklahoma v. U.S. Dep't of the Interior*, 640 F. Supp. 3d 1130, 1148 (W.D. Okla. 2022); *Harts v. Johanns*, 433 F. Supp. 2d 1251, 1255 (D. Kan. 2006).

### III.     The Nation's Constitution and the Secretarial Election Process

As noted above, the Nation adopted a constitution under the OIWA.  Both at the time of the parties' dispute and now, the constitution required amendments to be approved by Secretarial election.  Seneca-Cayuga Nation Const. art. XI; 2014 Const. art. XI.[9]

A Secretarial election is a federal election, administered by the BIA under the Secretary's authority as authorized by the OIWA or the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 5101–5129.  *See* 25 U.S.C. §§ 5203, 5123(a).  The regulations governing the election process are found at 25 C.F.R. pt. 81.

A Secretarial election may be requested through the enactment of a tribal resolution.  25 C.F.R. § 81.6(a).  The request must include the proposed amendment and a list of tribal members who will be at least 18 years old within 120 days of the request and who meet any other voting requirements a tribe has enacted for voting in a Secretarial election.  *Id.* § 81.6(a)(2), (b).  For an OIWA tribe, if a proposed amendment does not contain any provisions contrary to law, the BIA will approve the proposed amendment and authorize a Secretarial election to be held within 90 days of the request.  *See id.* § 81.46(a).

---

[9] "Amendments to this Constitution and the attached Bylaws may be proposed by a majority vote of the Business Committee or by a petition signed by 30 percent of the adult members of the Nation, and if approved by the Secretary of the Interior shall be submitted to a referendum vote of the members of the Nation, and shall be effective if approved by a majority vote."

The BIA then appoints a Secretarial Election Board ("Board") Chair and notifies the tribe that it must appoint at least two tribal members to the Board. *Id.* § 81.46(b). The Board conducts the Secretarial election. *Id.* § 81.21.[10]  It sets an election date and mails out a notice packet that includes the proposed amendments, a voter registration form, and the registration deadline. *Id.* §§ 81.20, 81.23(a), 81.24(b). The notice packet is distributed to all persons on the Eligible Voters List, *id.* § 81.22(b), which is compiled using the list provided in the election request, *id.* § 81.22(a). *See also id.* § 81.4 (noting that the "Eligible Voters list is compiled and certified by the tribe's governing body" unless the BIA maintains the current roll).

Tribal members on the Eligible Voters List must then register to vote in the election. *Id.* §§ 81.27, 81.29. Individuals who timely submit registration forms are placed on the Registered Voters List. *Id.* § 81.22(c), (e). The inclusion, exclusion, or omission of a name on the Registered Voters List can be challenged. *Id.* §§ 81.32, 81.33. After resolving all challenges, the Board prepares the official ballot. *Id.* § 81.34.[11]  Once the deadline for receiving ballots has passed, the Board counts the ballots and certifies the results. *Id.* §§ 81.38, 81.39, 81.41. Election results can then be challenged by any person on the Eligible Voters List who submitted a voter registration form. *Id.* § 81.43.

As noted below, Crow challenged the Registered Voters List under 25 C.F.R. § 81.32, and the challenge was denied by the Board. (*Infra* section IV.) The Board's

---

[10] Once an OIWA election is authorized, it is conducted by following the procedures applicable under the IRA and found at 25 C.F.R. § 81.19–81.45. *See* 25 C.F.R. § 81.47. The OIWA regulations reference the "Chair" conducting the election, while the IRA regulations reference the "Board" conducting the election. *Compare id.* § 81.47, *with id.* § 81.21. No party has argued that this distinction is relevant to the current dispute.

[11] Unless a tribe's governing document states otherwise, Secretarial elections are conducted entirely by mail. 25 C.F.R. § 81.35(a).

determination was "final for the purpose of determining who can vote in the Secretarial election." *Id.* § 81.33.  The undersigned has previously determined that this was a final agency action subject to review under the APA.  *Channing II*, 2024 WL 4284198, at *10 & n.23.  The parties both argue that it was, as well.  (ECF No. 59 at 5; ECF No. 62 at 4.)  The Court reviews this action in light of the record before the Secretary.

## IV.    **The Record**

The following facts are derived from the administrative record.  (ECF No. 57, DOI 1–714.[12])  On August 16, 2022, the Nation's Business Committee passed a resolution requesting the Secretary to call an election to amend five different provisions of the Nation's constitution and by-laws.  (DOI 6–14.)  One proposed amendment would significantly broaden the Nation's membership eligibility requirements to simply require an ancestor on the 1937 census roll.[13]  (DOI 11.)

On October 24, 2022, Goode sent an e-mail to Rhonda Loftin ("Loftin"), Superintendent of the Miami Agency BIA, introducing himself as an attorney for the Nation and enclosing the Business Committee's original resolution and a list of the Nation's adult members.  (DOI 5–116.)  Over the next three months, Loftin worked with Goode to perfect the election request, until a perfected request was made on January 23, 2023.[14]  (DOI 117–561.)  In February 2023, the BIA authorized a Secretarial election over

---

[12] The Court will use the "DOI" record numbering for consistency.

[13] The other amendments would lower the quorum needed for a General Council meeting; lower the written signatures needed to call a Special General Council meeting; adopt a specific parliamentary procedure for meetings; and clarify when the Nation's elected leaders take and leave office.  (DOI 9–10, 12–14.)

[14] Pursuant to 25 C.F.R. § 81.7, the BIA provides "technical assistance" to ensure that Secretarial election requests are in accordance with § 81.6 and other applicable law.  The Nation's perfected election request was its fourth request.  (*See* DOI 5–116 (first request); DOI 130–293 (second request); DOI 308–435 (third request); DOI 446–561 (fourth request).)

the five proposed amendments.  (DOI 567–68, 570–71.)  A Secretarial Election Board was formed, comprised of BIA representative Kathy Greenhaw ("Greenhaw") and Business Committee members Curt Lawrence ("Lawrence") and Donohue Bauer.  (DOI 570.)  The Board then sent out the Secretarial Election Notice Packet to the persons listed on the Eligible Voters List.  (*See* DOI 589–600 (a copy of the Notice Packet included in Crow's protest).)

The Registered Voters List was to be posted on March 23, 2023.  (DOI 591; *see also* DOI 574–85 (Registered Voters List).)  In a letter dated that same day, Crow issued a written challenge to the Registered Voters List under 25 C.F.R. § 81.32.[15]  (DOI 587–696.) Crow contended there were hundreds of tribal members, including Donohue Bauer, who were not "born of a marriage," did not qualify for tribal membership even though formally enrolled, and therefore did not qualify to vote in the Secretarial election.  (DOI 587–88.) As support, Crow attached the results of the 2018 third-party audit that he said revealed 451 members who did not meet the constitutional requirements for membership.[16] (DOI 601–03, 607-96.)  Crow also mentioned a 2019 Secretarial election to remove the "born of a marriage" provisions from the Nation's constitution, in which tribal members were allowed to vote even if purportedly not qualified to be members under the constitution.  (DOI 587.)  That amendment did not pass.  (*Id.*)  Finally, Crow noted that

---

[15] The first page of Crow's letter is dated March 23, 2023, but the second page is dated March 24.  (DOI 587-88.)  Though framed as a challenge to the "Secretarial Election Voters List," Crow does not dispute that his challenge was a § 81.32 Registered Voters List challenge.  (*See* ECF No. 59 at 5, 18.)

[16] Donohue Bauer is not listed in the audit report, perhaps because she was then subject to the Election Committee decision that declared her ineligible for membership.  (*See* ECF No. 2-6.)  In his challenge, Crow separately alleged that Donohue Bauer was ineligible, because she and her mother "do not meet qualifications to be members of the Nation." (DOI 588.)

the General Council had enrolled 273 people in 2022 and nearly 300 people in 2021. (DOI 587–88.)  According to Crow, "[w]ithout a doubt most of those 600 people do not meet the qualifications to become members of the Seneca-Cayuga Nation."  (DOI 588.) Crow did not identify these persons, nor did he provide any evidence of their lack of qualifications.

In a letter dated March 30, 2023, the Board denied Crow's challenge.  (DOI 698– 699.)  The Board interpreted Crow's challenge as applying to the 26 individuals who appeared on both the audit report and the Registered Voters List—plus Donohue Bauer, whose name appears on the Registered Voters list but not the audit report.  (DOI 698.) The Board provided the following reasoning for denying Crow's challenge:

> You claim in your challenge that these twenty-six (26) individuals (and Board member) were enrolled without a marriage license/paternity established; therefore, under the Constitution and By-Laws of the Seneca-Cayuga Nation . . . they are not members and should not be allowed to vote. To support your challenge, you provided an audit conducted by Creating Stronger Nations Inc. dated February 2, 2018, that lists twenty-six (26) individuals who were enrolled without a marriage license/paternity established.
>
> Since a Secretarial [e]lection is a federal process, the rules and regulations prescribed for conducting such an election are found in Title 25, Code of Federal Regulations, Part 81.  The Registered Voters List is defined in the regulations at Section 81.4 and is the list of all Registered Voters.  A Registered Voter is defined in the Regulations as an "eligible voter who has registered to vote in the Secretarial election."  An Eligible Voter is defined in the regulations as a "tribal member who will be 18 years of age or older o[n] the date of the Secretarial election."  In this specific instance, the Eligible Voters List was compiled by the Nation's governing body and submitted with the Nation's request for a Secretarial election.
>
> No evidence was provided to the Board to show that these 26 individuals (and Board member) are not members as of today.  Therefore, it is possible that these 26 individuals (and Board member) may have provided the documents and may be in compliance since the enrollment audit was completed in 2018.

Based on the above, the Secretarial Election Board recommends that Mr.
Crow's challenge be dismissed. This decision is final for the Seneca-Cayuga
Secretarial Election Board.[17]

(DOI 698–99.)  The Secretarial election process then continued, and the election was held

on April 14, 2023.   (DOI 703.)   All five proposed constitutional amendments were

comfortably approved, with the constitutional membership amendment passing by a vote

of 244 for and 54 against.  (DOI 705.)  On April 24, 2023, the BIA officially certified the

election results.  (DOI 714.)

## V.    **Analysis**

Crow seeks judicial review under the APA, contending the Board failed to follow

prescribed procedures and that its denial of his challenge was arbitrary, capricious, and

an abuse of discretion.  (ECF No. 59.)  Crow's interrelated arguments reduce to three

allegations of error: (1) the Board improperly relied on an "uncertified" Eligible Voters

List; [18] (2) the Board failed to determine whether the individuals listed in his challenge

were qualified to vote in the Secretarial election; and, relatedly, (3) the Board's reasoning

for declining to conduct such analysis was arbitrary and capricious.  (*Id.*)  Crow ultimately

seeks an order vacating the results of the election.  (*Id.* at 21.)

---

[17] The Board also discussed that "only the Enrollment Committee and General Council
can determine tribal membership, not an Election Board," but this language was not
included, because the "determination made by the Election Board[] was only to include
or exclude names on the eligible voters list with the documentation [Crow] provided in
his challenge" and it was not the Board's "decision to state who are members, who are not,
or who determines membership."  (DOI 700.)

[18] Under 5 U.S.C. § 704, "[a] preliminary, procedural, or intermediate agency action or
ruling not directly reviewable is subject to review on the review of the final agency action."

A. **The Board Did Not Observe the Procedure Required by Law in Creating the Registered Voters List, but Crow Has Shown No Prejudice**

The Board did not observe the procedures required when it created a Registered Voters List without having received an Eligible Voters List "compiled and certified by the tribe's governing body."

As noted above, to request a Secretarial election, a tribe must submit, among other things, a list of the names, addresses, and dates of birth of all tribal members who (1) will be at least 18 years old within 120 days of the date of the request and (2) who meet any other voting requirements established by the tribe's governing document for voting in the election (the "tribal list"). 25 C.F.R. § 81.6(b). The Board uses the tribal list "as the basis for the Eligible Voters List," *id.* § 81.22(a), which is defined as "a list of eligible voters, including their birthdates and their last known mailing addresses," *id.* § 81.4. The definition further notes that the "Eligible Voters List is compiled <u>and certified by the tribe's governing body</u>" unless the BIA maintains the membership roll. *Id.* (emphasis added); *see also Secretarial Election Procedures*, 80 Fed. Reg. 63094, 63105 (Oct. 19, 2015).[19]

The Federal Defendants do not dispute that a certified list was required. (ECF No. 62 at 16.) Instead, they argue that the Business Committee "had the authority to provide . . . the compiled and certified Eligible Voters List . . . ." (*Id.* at 20.) They assert that because Goode's correspondence included tribal resolutions, it is "reasonable, common

---

[19] "The information to be collected includes the language to be voted on, and a <u>certified</u> list of tribal members who will be age 18 at the time of the Secretarial election and their current addresses or a <u>certified</u> Eligible Voters List with addresses. Such a list with names and addresses is necessary to ensure that all eligible voters receive notice of the Secretarial election and the opportunity to register and vote in the election." 80 Fed. Reg. at 63105 (emphasis added).

sense" to infer that everything in the e-mail was "created, maintained, compiled, and certified by the Nation . . . ." (*Id.*) This proves too much. The final, perfected Secretarial election request included tribal resolutions that were enacted by the Business Committee, the Nation's day-to-day governing body, as certified by its Chief and Secretary-Treasurer.[20] (DOI 447–462.) None of those resolutions, however, certify the tribal list. Having seen what official action of the Business Committee looks like, it was not reasonable for the Board to assume that other documents were similarly "certified" by the Business Committee by its silence.

Even so, Crow has shown no prejudice from this procedural error. There is no dispute that Goode was acting as attorney for the tribe and that its Chief was copied on the Secretarial election request, as well as most of the related correspondence between Goode and the BIA leading up to the perfected request. More importantly, there is no evidence that requiring the Business Committee to certify the tribal list would have resulted in <u>any</u> changes to that list. Indeed, it is clear that the Business Committee considered the persons on the list to be members of the Nation—even those Crow claims were ineligible, like Donohue Bauer and Nuckolls. Crow, himself, believed the ineligible persons had been made members of the Nation, albeit in violation of the Nation's constitution. The Board's failure to obtain a <u>certified</u> copy of the tribal list had no effect on the outcome of Crow's challenge.

---

[20] The Court rejects Crow's argument that the General Council, which is constitutionally required to meet only once a year, was the "governing body" required to certify the Eligible Voters List. (ECF No. 59 at 11.) The Nation's Constitution empowered the Business Committee to "speak [and] act on behalf" of the Nation "in all matters on which the Nation is empowered to act." 2014 Const. art. VI. It was perfectly reasonable for the Board to rely on the words and actions of the Business Committee.

**B.     The Board Erred in Consideration of Crow's Challenge, but Crow Has Shown No Prejudice**

Crow's remaining arguments can be addressed together.  Crow contends the Board had a duty to determine whether the individuals listed in his challenge were qualified to vote in the Secretarial election.  (ECF No. 59 at 12–15.)  Crow then argues the Board's reasoning for not conducting such analysis was arbitrary and capricious.[21]  (*Id.* at 18–21.)

Under § 81.32, the "inclusion or exclusion or omission of a name on the Registered Voters List" may be challenged in writing.  25 C.F.R. § 81.32(a).  The challenge must include: (1) the names of the affected individuals; (2) the reasons why they should be added to or removed from the Registered Voters List; and (3) supporting documentation. *Id.*  All timely challenges must be resolved by the close of business on the third day after the date of the challenge deadline.  *Id.* § 81.33.  If the Board upholds the challenge, it will add any individual who should be included or remove any individual who should not be listed on the Registered Voters List.  *Id.* § 81.33(b).  Here, Crow did not challenge any exclusions from the list; he only challenged the inclusion of persons on the 2018 audit. (DOI 587.)

---

[21] Crow also briefly argues it was arbitrary and capricious for Greenhaw not to recuse Donohue Bauer from the Board once her tribal membership was brought into question. (ECF No. 59 at 20; ECF No. 63 at 10.)  Crow points to no law allowing a Board chair to remove a Board member.  The only situation where the chair can appoint a Board member is where the tribe or tribal spokesperson fails to appoint a Board member within the time requirements set forth in § 81.46.  In this case, the Business Committee enacted a resolution appointing Donohue Bauer and Lawrence to the Board within the time required.  (DOI 470–71.)

Other than requiring a challenger to give the "reasons why" someone should be removed from the list, the regulations provide little detailed guidance.[22]  Crow argues that, once he raised the issue, the Board was required to determine whether the listed individuals were eligible to vote in the election and that this analysis should have included determining whether they satisfied the Nation's constitutional membership criteria. (ECF No. 59 at 15.)  As support, Crow concatenates the regulatory definitions of registered voter, eligible voter, and tribal member.  (*Id*. at 12–15.)  That is, a "registered voter" is "an <u>eligible voter</u> who has registered to vote in the Secretarial election."  25 C.F.R. § 81.4 (emphasis added).  An "eligible voter" is a "<u>tribal member</u> who will be 18 years of age or older on the date of the Secretarial election (and, if a tribe's governing document imposes additional requirements for voting in a Secretarial election, also meets those requirements)."  *Id.* (emphasis added).  And, a "tribal member" is "any person who meets the criteria for membership in a tribe and, if required by the tribe, is formally enrolled." *Id.*  Crow argues that, because the definition of registered voter references eligible voter, which in-turn references tribal member, the Board had a duty to determine whether the challenged individuals met the Nation's constitutional criteria for membership in determining whether they should be removed from the Registered Voters List.  (ECF No. 59 at 14–15.)

The Federal Defendants contend the regulations do not authorize the Board to "'look behind' the Eligible Voters List and conduct their own inquiry into whether individuals meet a tribe's membership criteria," and that § 81.32 challenges involve more

---

[22] In discussing post-election challenges under § 81.43, the Department noted the final rule does not provide greater specificity on what types of challenges merit consideration, because both § 81.32 and § 81.43 challenges are fact-specific.  80 Fed. Reg. at 63102.

"modest" issues like determining voters' ages or whether an individual timely registered to vote.[23]   (ECF No. 62 at 21, 25, 28–29.)

### 1.   The Board Properly Construed Crow's Challenge as Applying to 27 Voters

Although Crow provided a list of 451 purportedly ineligible voters, the Board did not abuse its discretion in construing his submission as a challenge to 27 persons listed on the Registered Voters List.

Though vaguely framed as a challenge to the "Secretarial Election Voters List" (DOI 587), it is undisputed that Crow's challenge was made under § 81.32.  (ECF No. 59 at 5, 18; ECF No. 62 at 10.)   A § 81.32 challenge is a challenge to the Registered Voters List, not the Eligible Voters List.  *See* 25 C.F.R. § 81.32(a).  Crow presented evidence for his belief that 451 tribal members could not vote in the Secretarial election because they did not meet the Nation's constitutional criteria for membership.  (DOI 601–96.)  Crow further alleged that Donohue Bauer also did not meet the Nation's membership criteria.  (DOI 588.)   In accordance with § 81.32, the Board apparently cross-referenced the individuals listed in Crow's challenge with the Registered Voters List and found 26 individuals (plus Donohue Bauer), who were listed in Crow's challenge and who appeared on the Registered Voters List.[24]  Because a § 81.32 challenge is limited to the Registered

---

[23] The Federal Defendants do not contend their interpretation of the regulations should be afforded *Auer* deference.  In any event, the Federal Defendants have provided no indication that their interpretation is the "authoritative or official position."  *See Kisor v. Wilkie*, 588 U.S. 558, 574–79 (2019) (*Auer* deference is only applicable where (1) the regulation is "genuinely ambiguous," (2) the agency's interpretation is "reasonable," and (3) the agency interpretation is the "authoritative or official position," implicates the agency's "substantive expertise," and reflects the agency's "fair and considered judgment" (citing, *inter alia*, *Auer v. Robbins*, 519 U.S. 452 (1997))).

[24] The Board did not specify how it reached 26 names, but the Court can follow its reasoning by comparing the names on the unredacted versions of Crow's list (DOI 607–96) and the Registered Voters List (DOI 574–85).  (*See also* ECF No. 59 at 20.)

Voters List, the Board had no duty to determine if all 451 listed individuals were eligible to vote in the Secretarial election.

The Board similarly did not abuse its discretion in refusing to conduct a review of "those 600 people" enrolled by the General Council in 2021 and 2022.  (DOI 588.)  Crow did not provide those persons' names, any specific bases for their purported ineligibility, or any supporting documentation.  25 C.F.R. § 81.32(a).  The Board properly did not consider these vaguely referenced persons as being part of Crow's challenge, and Crow does not argue otherwise.  (*See* ECF No. 59 at 18 (arguing only that Crow met the requirements of a § 81.32 challenge by "providing 451 names").)

### 2.    The Board Erred in Believing It Had No Authority to Question the Tribal List

The Court rejects Defendants' argument that the regulations do not permit the Board "to question the accuracy" of the tribal list/Eligible Voters List because it was provided by the Nation in its election request.  (ECF No. 62 at 25.)  Such reading is contrary both to the plain language of the regulations and to the Department's commentary when adopting the current version of the regulations.

As noted above, the Board mails an election notice to all persons on the Eligible Voters List.  25 C.F.R. § 81.22(b).  While the regulations state that the tribe compiles the Eligible Voters list, *id.* § 81.4, they also state that that the Board uses the tribal list as the "basis" for the Eligible Voters List, *id.* § 81.22(a).  The regulations do not provide that the Board has no authority to look beyond the tribal list.  Indeed, under its common definition, "basis" means "the bottom of something considered as its foundation" or "the principal component of something"—*e.g.*, "Fruit juice constitutes the *basis* of jelly."

18

*Basis*, Merriam-Webster Dictionary, merriam-webster.com (last visited July 28, 2025).[25] The regulations then empower the Board to develop the Registered Voters List.  25 C.F.R. § 81.22(e).  Once the Registered Voters List is publicly posted, the regulations provide an opportunity to challenge the inclusion or exclusion of a name on that list, and for the Board to decide such challenges.  25 C.F.R. §§ 81.32–81.33.  The regulations explicitly vest in the Board the final power to determine who can vote in the Secretarial Election. *Id.* § 81.33.  The regulations further provide definitions for Registered Voter, Eligible Voter, and Tribal Member that inform this decision.  *See id.* § 81.4.  In those regulations, the Department chose to define Tribal Member as someone "who meets the criteria for membership in a tribe" and not merely by reference to whether they were included on the tribal list.  *See id.*  It is not reasonable to adopt the Secretary's position that, when determining whether someone should be on the Registered Voters List (i.e., whether they were an Eligible Voter who registered to vote), the Board can only determine whether part of the "Eligible Voter" definition is met (whether someone will be 18 years of age or meets additional tribal requirements for voting) but cannot determine whether the rest of that definition is met (whether someone is a "tribal member" as that term is defined by the regulations).  The plain language of the regulations indicates that, although the Board starts with the tribal list, its job does not end there.

Even if the language were ambiguous, this conclusion is further supported by the Department's comments when adopting the final rule.  When a commentator stated that "tribes, rather than the [BIA] or Board, should determine who qualifies as registered voters under tribal standards," the Department responded that the list provided by the

---

[25] https://www.merriam-webster.com/dictionary/basis [https://perma.cc/9VSE-3TNQ] (last visited Aug. 8, 2025).

tribe would be the "starting point" but also emphasized the Department's responsibility. 80 Fed. Reg. at 63099–63100.  The Department referenced the federal requirement that the minimum age must be 18, because Secretarial elections are federal elections, and noted that, if the amendment section of the tribe's governing documents includes eligibility qualifications, the BIA would apply those.[26]  *Id.*  In the midst of this discussion, the Department noted that it "has a responsibility to verify the list provided by the tribe to ensure that the rights of individual tribal members to vote in the Federal election are protected." *Id.*

Later in the comments, the Department again emphasized that it "relies on the tribe's Eligible Voters List in compiling the Registered Voters List; however, in recognition that there may be inaccuracies, the regulations allow individuals the opportunity to challenge the Registered Voters List." *Id.* at 63100; *see also id.* at 63096 (noting the regulation's definition of tribal member "signifies that there is a rebuttable presumption that the tribe's identification of its members is accurate" and "also signifies that the list must, in fact, be accurate, by including all persons who meet the tribe's criteria for membership and who will be 18 years old or older" (emphasis added)).

The record and briefing indicate the Board considered itself unable to consider <u>any</u> challenge to the Registered Voters List on the grounds that an individual was not a member of the tribe.  (DOI 698,[27] 700; ECF No. 62 at 26 ("The Secretarial Election Board

---

[26] The age requirement is specifically mentioned in reference to federal elections, because the Twenty-Sixth Amendment provides that the right to vote "shall not be denied or abridged by the United States . . . on account of age."  *See* 25 C.F.R. § 81.11; *see also* 80 Fed. Reg. at 63098 (noting that the Secretarial election will apply all tribal eligibility qualifications, <u>except</u> an age restriction, for this reason).

[27] The Board's statement that "it is possible" the 27 individuals had rectified their membership issues appears to be a further reflection of the Board's belief that it could not inquire into whether or not this had, in fact, occurred.  (DOI 699.)

refused to go beyond the information presented to it and 'state who are members, who are not, or who determines membership.'".)  To the extent the Board refused to consider Crow's challenge, because it believed it had <u>no</u> legal authority to question whether any person on the list was, in fact, a member of the tribe, this was a legal error and an abuse of discretion.[28]  *Cf. Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999) (noting under prior regulations that the "Secretary's powers to disapprove an election upon the filing of a proper challenge are very broad, and can include flaws in the make-up of the eligible electorate"); *Shakopee Mdewakanton Sioux (Dakota) Cmty. v. Babbitt*, 107 F.3d 667, 671 (8th Cir. 1997) (upholding, under a pre-*Loper Bright* deferential standard,[29] Secretary's decision to disapprove election results due to possible errors in voter-eligibility determinations).[30]

---

[28] This is not to say the Board necessarily had an obligation to overrule tribal citizenship determinations by finding that the Nation's supreme governing body, the General Council, had unconstitutionally granted membership.  Although the Court does not find remand required (discussed *infra*), it is possible that, if remanded, the Board might reach the same conclusion as to the federal eligibility of some or all of the 27 persons challenged by Crow.  Or, the Board might determine that the 27 individuals did not qualify as tribal members eligible to vote under the Nation's constitution in a Secretarial election.  The undersigned does not offer an opinion on that issue.

[29] *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) (overruling the framework for deference to agency decisions found in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

[30] The regulations governing Secretarial elections were substantially revised in 2015.  Prior regulations did not have the tribe provide the starting point for an eligible voters list.  Instead, the Board was simply obligated to notify "all adult members of the tribe, who to its knowledge are eligible to vote pursuant to § 81.6," as well as those members who soon turn 18, of their need to register to vote.  25 C.F.R. § 81.11(a) (2014).  However, "member" was similarly defined as "any Indian who is duly enrolled in a tribe who meets a tribe's written criteria for membership or who is recognized as belonging to a tribe by the local Indians comprising the tribe."  25 C.F.R. § 81.1(k) (2014).  And, the Board was similarly empowered to decide eligibility disputes.  25 C.F.R. § 81.13 (2014).

**3.    Remand Is Not Required, because the Board's Error Caused Crow No Prejudice and a Proper Consideration of His Challenge Would Change Nothing**

The Court next determines whether remand is necessary to allow for consideration of Crow's challenge without the artificial restrictions the Board imposed.  The Court must make its determination while taking "due account . . . of the rule of prejudicial error."  5 U.S.C. § 706.  Here, the only issue properly raised by Crow was that 27 persons were registered to vote in the Secretarial election despite his belief that they were ineligible to do so.  For that reason, Crow argues the results of the Secretarial election should be vacated.  (ECF No. 59 at 21.)  That is, Crow appears to be arguing that he was prejudiced by the Board's improper decision through the passage of the five constitutional amendments.[31]  (*See* ECF No. 2 at 37.)  But, Crow fails to connect the alleged wrong to any harm that would warrant the relief he seeks.  Even <u>if</u> all 27 persons were—in fact—ineligible to register to vote, <u>and</u> all 27 voted in the election, <u>and</u> all those votes were in favor of the amendments, those amendments still would have passed without their vote.  Crow does not dispute that the five amendments passed by margins of 254–44, 228–70, 244–54, 189–109, and 222–76, respectively—all margins in excess of 27 votes.  (DOI 705.)  This is not a situation where a Board's determination affected the election's "fundamental integrity and fairness."  *Cf. Shakopee Mdewakanton Sioux (Dakota) Cmty.*, 107 F.3d at 669–70 (noting Secretary did not approve Secretarial election results—

---

[31] Crow also argues he was prejudiced, because the Board deviated from the "mandatory" regulations during the election process.  (ECF No. 59 at 17.)  The Court rejects this argument.  Crow cannot base prejudice solely on the failure to comply with the regulations; he must instead show that the noncompliance <u>resulted</u> in actual prejudice.  *See Harts*, 433 F. Supp. 2d at 1255 ("Even where an agency fails to comply strictly with its requirements, the administrative determinations made will not be set aside in the absence of prejudice to the plaintiff." (quoting *Lewis v. Glickman,* 104 F.Supp.2d 1311, 1324 (D. Kan. 2000))).  Crow has failed to make such a showing here, for the reasons discussed in this Opinion.

where 44 people were removed from 111-person Registered Voters List and proposed constitutional amendment only passed by a vote of 35 to 27).  Therefore, because the amendments would have passed even if the 27 individuals were removed from the Registered Voters List, Crow cannot demonstrate that their inclusion affected the outcome of the election and remand is unnecessary.

IT IS THEREFORE ORDERED that Crow's *Complaint for Violation of Administrative Procedure Act* (ECF No. 2) is DENIED, and the Secretary's decision is AFFIRMED.

ORDERED this 13th day of August, 2025.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT